Mr Justice Thompson
 

 delivered the’opinion of the Court.
 

 The appellant, Edward Livingston, filed his bill of complaint ' in the district court of the United States for the eastern district of Louisiana, against the appellee, Benjamin Story, to set aside a conveyance made by him. of certain lots of land in the city of New Orleans, and" to be restored to the possession of said lots'; alleging that the deed was given on a contract for the loan of money. Although in • the form of a sale, it was in in reality a pledge for the repayment of the money loaned, and calling for an account of the rents and profits of the property.
 

 To. this bill the defendant demurred; and the court sustained the demurrer and dismissed' the complainant’s bill, and the cause comes into this court on appeal.
 

 It will be enough for the purpose of disposing of the-questions which have been made in this case, to state, only some of the leading facts which are set forth and stated in the bill.
 

 . The bill alleges that on.or about the 25th of July. 1832, the defendant and John A., Fort loaned to him, the complainant, the sum of 22,936 dollars, to secure the payment of which, with interest at the rate of eighteen per cent per annum, he conveyed tb them a lot of ground in New Orleans, with the
 
 *653
 
 buildings and improvements thereon. That a counter letter or instrument was, at the same time, executed by the. other parties, by which they stipulated to reconvey the property on certain conditions. That the lot was covered with fifteen stores, in . an unfinished state, and the object of the loan was to complete them. The property is stated to have been worth at that time 60,000 dollars, and is now worth double that sum. That the complainant, soon after the said transaction, left New Orleans, where he. then resided, on a visit to the state of New York, expecting that during his absence some of the stores would have been finished, or in a state to let. That on his return, he.found that Story and Fort had paid 8000 dollars to a contractor, who had failed to finish the buildings, the rent of each of the three smallest of which would be the interest of 10,000 dollars a year when finished. A further time was requested for the payment of the money, which Story and Fort would not agree to; but upon condition that the property should be advertised for sale on a certain day namedthat the sum due should be increased from 25,000 dollars to 27,000 dollars, which sum was made up by adding to the 25,000 dollars the following sums; 1500 dollars for interest for the delay of four months, at eighteen per cent; 800 dollars for auctioneer’s commissions; 50 dollars for. advertising, and 200.'dollars arbitrarily added without any designation
 
 ;
 
 and that he, the complainant, should annul the counter letter given to .him by Story and Fort. That the complainant, being entirely at the meicy.of the said Story and Fort, consented to these terms, in hopes of being able to relieve himself before the day fixed for the sale of his property; but being disappointed, he was on that day, in order to obtain a delay of sixty days, forced to consent to sign a paper, by which it was agreed that the debt should be augmented to the sum of 27,830 dollars, and that if the same was not paid at the •expiration of the sixty days, the property , should belong to the. said Fort and Story without any sale. The bill contains some other allegations of hardship and oppression, and alleges that the rents and profits of the property received by Fort and Stofy. in the life time of Fort, and by Story since the death óf Fort, amount, at least, to 60,000 dollars. The bill then j)rays.that the said Benjamin Story may be cited to appear to the bill of complaint,'and answer the interrogatories therein propounded.
 

 
 *654
 
 The defendant, in tbe court below, demurs to the whole bill, and for cause, shows that the complainant has not by his said bill made such a'-case as entitles him, in a' court of equity in this state, to any discovery from this defendant, touching the matters contained in the said-bill, or any or either of such matters; nor to entitle the said complainant to any relief in this court, touching any of the matter's therein complained of. The want of Droper parties is also assigned for cause of demurrer.^
 

 The court belów did not notice the want of parties, blit sustained the demurrer on the other causes assigned.
 

 The argument addressed to this court has been confined, principally, to.the general question, whether- the district court of the United States, in Louisiana, has equity powers ; and, if so, what are the modes of proceeding in the exercise of such powers. The great earnestness with which this power has been denied at the bar to the district court, may make it proper briefly to state the origin of the district court of that stale, and the jurisdiction conferred upon it by the laws of the United States. When the constitution was adopted, and the courts of the union organized, and their jurisdiction distributed, Louisiana formed no part of this union. It is not reasonable, therefore, to-conclude that any phraseology has been adopted with a view to the peculiar local system of laWs in that state. She was admitted'into the union in the year 1812] and, by the act of congress, passed for that purpose, 4 Laws U. S. 402, it is declared, that there shall be established a district court, to consist of one judge, to be called the district judge, who shall, in all things, have and
 
 exercise
 
 the same jurisdiction and powers, which, by- the act, the title whereof is in this section recited, were given to the district judge of the territory of Orleans. By the act here referred to for the jurisdiction and powers of the court, 3 Laws U. S; 606, a district court is established, to consist of one judge; and it declares"that he shall, in all things, haye and exercise the same jurisdiction and powers which are by law given to, or may be exercised, by the judge of the Kentucky district; And, by the judiciary act of 1789, 2 Laws U. S. 60, it is.declared, that the district court in Kentucky shall, besides the jurisdiction given to other district courts, have'jurisdiction of all other causes, except of appeals
 
 *655
 
 and writs of error, hereinafter made cognizable in a circuit, court, and shall proceed therein in the same manner as a circuit court. And such manner of proceeding is pointed out by the process act of 1792, 2 Laws U. S. 299, which declares that the modes of proceeding in suits of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled,
 
 “
 
 an act to regulate process in the courts of the United Slates viz., the same as are now used and ■ allowed in the supreme courts of the respective states, 2 Laws U. S. 72; and in suits of equity, and those of admiralty and maritime jurisdiction, according to the principles, rules and usages which belong to courts of equity, and courts of admiralty respectively, as contradistinguished from courts of common law ; subject to such alteration by the courts as may be thought expedient, &c.
 

 From this view of the acts of congress, it will be seen that prior to the act of 1824, which will be noticed hereafter, Louisiana when she came into the union had organized therein a .district court of the United States, having the same jurisdiction, except as to appeals and writs of error, as the circuit courts of the United States, in, the other states, And that in the modes of proceeding, that court was required to proceed according to the principles, rules and usages which belong to courts of equity, as contradistinguished from courts of common law. And whether there were or not, in the several states, courts of equity proceeding according to such principles and usages, made no difference, according to the construction uniformly adopted by this court.
 

 In the case of Robinson v. Campbell, 3 Wheat. 222, it is said, that in some slates in the union, no court of chancery exists to administer equitable relief. In some of the states, courts of law recognize and enforce in suits at law, all equitable claims and rights which a court of equity would recognize and enforce ; and in others.all relief is denied, and such equitable claims and rights are to be considered as mere nullities atláw : and a construction, therefore, that would-adopt the state practice in all its extent, would at once extinguish in such states the exercise of equitable jurisdiction. That the acts of congress have distinguished between remedies at common law and in equity, and that to effectuate the purposes of the legisla--
 
 *656
 
 ture, the remedies in the courts of the United States are to be at common law or in equity, not according to the practice of the state courts, but according to the principles of common-law and equity, as distinguished and defined in that country from which we derive our knowledge of those-principles. . ■ So ^ also in the case of the. United States v. Howland, 4 Wheat. 114, the bill was filed on the equity side of the circuit court of the United States-, in Massachusetts, in which state there was no court of chancery; and in answer to this objection the court says : “as the1.courts of the union have a chancery jurisdiction in every state,: and'the judiciary act confers the same ehancery powers on all, and gives the same rule of decision, its jurisdiction in Massachusetts must be .the same as in other states.”
 

 That congress has the power to establish circuit and district courts in any and all the states, and confer.on them equitable jurisdiction in cases coming'within the constitution, cannot admit of a doubt. It falls within the' express words of the constitution. “ The judicial powér of the 'United States shall’ be vested in one supreme court, and in such inferior courts as the congress may, .from time to time, ordain and establish*” Article 3. And that.the power to ordain and establish, carries with it the. power to prescribe- and regulate the modes of proceeding in such courts, admits of as little doubt. And, indeed, upon no other ground can the appellee, in this case, . claim the benefit of the act of 1824. Sessions Laws 56. The very title of that act is to regulate the mode of practice in the courts of the United States,In the district of Louisiana; and . it professes ho more than to regulate the practice.' It declares that the mode of proceeding in
 
 civil causes,
 
 in the courts of the United States, that now are, or hereafter may- be established in the state of’Louisiana, shall be conformable-to the laws directing the mode of proceeding in the .district courts of said state. And power is given to the judge of the United States court to make, by rule,,such provisions as are necessary’to adapt the laws of procedure in the state court, to the organization of the courts of the United States; so as to avoid any discrepancy, if any such should exist, between such state laws and the laws of the United States. The descriptive terms here used,
 
 civil actions,
 
 are broad enough to embrace cases at
 
 *657
 
 law and in equity; and may very fairly be construed, as used in contradistinction to criminal causes. There aré no restrictive op explanatory words employed* limiting the terms, to actions at law. They apply equally to cases in equity ; and if there are any laws in Louisiana directing the mode of pro--cedure in equity causes, they aré adopted by the act.of 1824, and wjill govern the practice in the courts of the United States. But the question arises, what is to. be done if there are no equity state courts, nor any laws regulating. the practice in equity causes. This question would seem to be answered by the cases ■ already referred to, of Robinson v. Campbell, and The United States v. Howland. And also by the case of Parsons v. Bedford, 3 Peters 444. In the latter case, the court' say, “ that tlie. course of proceeding, under -the state, law of Louisiana, could not, of itself, have any intrinsic force of obligation in.the courts of the United' States organized in that state,-except so far as the act of 1824 adopted the state practice ; that no absolute repeal was intended of the antecedent modes of proceeding authorized in the courts of the’United States, under the former acts of congress.”
 

 If then, as has been asserted at the bar, there are no equitable claims or rights recognized inthatstate, nor any courts of equity,nor state laws regulating the practice in equity causes, the law of 1824 does.not apply to the case now before this court; and the district court was bound to adopt the antecedent mode of proceeding authorized under the former acts of congress: otherwise, as is said in the case of Robinson v. Campbell, the exercise of equitable jurisdiction would be extinguished in that state; because no equitable claims or rights which a court of equity would enforce, are there recognized. And there being no court of equity in that state, does not .prevent the exercise of equity jurisdiction in the courts of the United States, according to the doctrine of this court in the case of the United States v. Howland, which arose in the state of Massachusetts, where there are no equity state courts. We have not been referred to any state law of Louisiana, establishing any state practice in equity cases ; nor to any rules adopted by the district judge in relation to such practice ; and we have some reason to conclude that no such rules exist. For, in a record now before
 
 *658
 
 us, from that court,in Aerease of Sebastian Hiriart v. Jean Gassies Ballon,
 
 (a)
 
 we find a set of rules purporting'to have been adopted by the court on the 14th of December 1829, with the following caption : “ General rules for the government of the United States court in the eastern district of Louisiana in
 
 civil cases
 
 or suits at law, as contradistinguished from admiralty and
 
 equity cases',
 
 and criminal prosecutions'; made in pursuance of the-seventeenth section of the judiciary act of 1789, and of the first section of the act of congress of the 26th of May 1824, entitled, “’an act to regulate the mode of practice in the courts of the United States for the district of Louisiana.” And all other rules are annulled ; and these rules relate to suits at law and in admiralty only, and not to suits in equity. From'which it is reasonable to infer, that the district judge did not consider the act of 1824 as extending to suits in equity; and if so, it is very certain that the demurrer.ought to have been overruled. For, according to the ordinary mode of proceeding in courts of equity, the- matters stated in the bill are abundantly sufficient to entitle the complainant, both to a discovery and relief; and by the demurrer, every thing well set forth, ,and which was necessary to support the demand in the bill, must be taken to be true. 1 Ves. Sen. 426 ; 1 Ves. Jun. 289. And if any part of the bill is good, and entitles the complainant, either to relief or discovery, a demurrer to the whole bill cannot be sustained. It is an established and universal rule of pleading in chancery, that a defendant may meet a complainant’s bill by several modes of defence. He may demur, answer arid plead to different parts of a bill. So that if a bill for discovery arid relief contains proper matter for the one, and not for the other, the defendant should answer the proper, and demur to the improper matter. But if he demurs to the whole bill, the demurrer must be overruled. 5 Johns. Chan. 186; 1 Johns. Ca. 433.
 

 Bdt if we lest this bill by any law of Louisiana which, has been shown at the bar, or that lias fallen under our observation, the demurrer cannot be sustained.. The objection founded on the alleged want of proper parties, because the heir and resi
 
 *659
 
 duary legatee of John A. Fort is not made a party, is not well founded. The bill states, that in the year 1828, after the death of Fort, the defendant, Benjamin Story, took the whole óf the property, by some arrangement with the heirs of Fort; and that he ever since has been, and is now, in- the sole possession thereof, and has received thé rents and profits of the same. This fact the' demurrer admits. Whereby Benjamin Story became .the sole party in interest.
 

 The causes of demurrer assigned,-are general; that the complainant has not, by his bill, made such a case as entitles ' him, in.-a court of equity in that state, either to a discovery or relief. In the argument at the bar, there has been no attempt to point out in whát respecETthe bill is defective, either in form or substance, as to the discovery; if it is to be governed by the ordinary rules.of pleading in a court of chancery. And if the objection rests upon the want of the right in , the complainant to call upon the defendant for' any discovery at all, the object tion is not sustained even by the laws of Louisiana. But on the contrary, it is expressly provided by a law of that state, that when any plaintiff shall wish to obtain a discovery from the defendant, on oath, such plaintiff may. insert in his petition, pertinent interrogatories, a.nd.ma’y call., upon .the defendant to answer them on oath ; and that thedefendiWit shall distinctly answer to such interrogatories, provided they do not tend' to charge him with any crime or .offence against any penal law ; neither of which has been pretended in this case. 2 Martin’s Dig. 158-
 

 Nor has it been attempted to point out in what respect the bill of complaint is defective, feither in form or substance, as to the matters of relief prayed. In- this respect,'also, the bill ■ according to the ordinary course of proceeding in a court of chancery, is unobjectionable ; and indeed would be amply sufficient in the state courts, under the law of Louisiana; which declares that all suits in the supreme court shall be commenced by petition, addressed to the court, which shall state the names óf the parties, their places of residence, and the cause ofaction, with the necessary circumstances of places and dates; and shall conclude with a prayer for relief adapted to the circumstances of the case. 2 Martin’s Dig. 148. These are the
 
 *660
 
 essential requisites in an ordinary bill in chancery; It can certainly not be.pretended, that it is any objection in'the case before us, that the bill filed is called a bill of complaint, instead of a petition.
 

 The sufficiency.of the objections, therefore, must turn upon the general question, whether the district court of Louisiana has, by the constitution and laws óf thé United States, the same equity powers, as a circuit court of the United States has in the other states of the union ; and we think it has been already shown that it has: but, that according to the- provisions of the act of 1824, the mode of proceeding in the exercise of. such powers, must be conformably to the laws directing the mode of practice in the district courts of that state, if any such
 
 exist;
 
 and according to such rules as may be established by the judge of the district couit under the authority of the act of 1824. And if no such laws and rules applicable to the case exist in the state .of Louisiana, then such equity powers must be exercised according to the principles, rules and usages óf the circuit courts of the United States, as regulated arid prescribed for the circuit courts in the other states of.the union.
 

 The decree of thé district court must, accordingly, be reversed ; and the cause sent back for.further proceedings.
 

 Mr Justice M’Lean.
 

 . The inferior courts of the United States can only exercise jurisdiction under the laws of congress; and a general law giving equity jurisdiction will apply as well to the courts of the United States in Louisiana, as in any other state in the union. Thé same may be said as to a general law regulating the exercise of a common law jurisdiction.
 

 Vgut, as it regards the courts of the United States in Louisiana, congress have made an exception from the general law, by the act of 1824.’ This act provides, “ that the mode of proceeding in civil causes in the courts of the United States, that now are, or hereafter may be established in the state of Louisiana, shall be conformable to the laws directing the.mode óf practice in the district court, of the said state: provided, that the judge of any such court of the United States may alter the • limes limited or allowed for different proceedings in the state
 
 *661
 
 courts, and make, by rule, such other, provisions as .may be necessary to adapt the said laws of .procedure jto the organization of such court of the United States ; and to avoid any dis-’ crepancy, if-any.such.should exist, between such' state laws and the laws of the United States.”
 

 The proceedings in the state, courts of Louisiana are conformable to the civil law; and the same course of. proceeding under the above law, has been adopted in the'district court of the United States in that state ; and by.the judgment of this court, this course of practice has been sustained.
 

 The above act applies to all civil causes, and, of course, embraces-all causes both-at common law and in' chancery; and its provisions apply as forcibly to an-equitable jurisdiction, as to one exercised in accordance with the rules of_ the common law. The peculiar mode of procedure under the Louisiana practice, preserves, substantially, the same dorms in affording a remedy in all cases. And whether the ground of action be in the principles of the-common law* or in. the exercise of an equitable jurisdiction, by this mode of proceeding an adequate remedy is given.
 

 In “ ah act further to regulate process in the courts of the United States,” passed in 1828,.and which provides for “proceedings in equity, according to the principles, rules and usages which belong to courts of equity,” &c., it- is declared, that its provisions shall not be extended to any court of the United States in Louisiana.
 

 No stronger legislative provision- could have been adopted to show that congress did not consider that the “ principles, rules and usages which belong to courts of equity,” were in force in that state. And this view was, in my opinion, correct, as the law .of 1.824 had made the federal court practice in Louisiana, an exception to the general .'law on the subject.
 

 If the principles, rules and usages, which belong to courts of equity, are to be regarded in the district court of Louisiana, the same principle must hdopt, in the same court, the rules and usages which belong to courts of common law. But the latter have been abrogated by the act of 1824, agreeably to the decision of this court; and it appears to mo, this decision must equally.apply to the former. If the act of 1824 be re
 
 *662
 
 garded, it mu‘st regulate the mode of proceeding in all civil causes, as contradistinguished from criminal ones.-
 

 This cause came on to be heard on.the transcript of the record from the district court of the'United States, for the eastern district of Louisiana, and was argued by counsel; on consideration wherfeof, it. is ordered and decreed by this court, that the decree of the said district court in this cause be, and the same is hereby reversed; and that'this cause be, and the same is hereby remanded to the said district court for further proceedings to be had therein, according to law and justice, and in conformity to the opinion and decree of this court;
 

 (a)
 

 Ante page 156.