HOWARDS *v.* SELDEN and others; *Ex parte* TURPIN.

(*Circuit Court, E. D. Virginia.* May, 1880.)

**1. JURISDICTION OF FEDERAL COURT—EQUITABLE RELIEF—RESIDENTS OF SAME STATE.**

In a suit in a state court for an account against a deputy sheriff, who was insolvent and in default, and against his sureties, in which the high sheriff and his sureties and two creditors were parties, a decree was rendered in favor of the creditors, awarding each a sum of money. The non-resident representatives of one of these creditors, who had died, brought a chancery suit in a United States circuit court making the other creditor and all the parties to the suit in the state court parties defendant, all the defendants being residents of the state. In this suit, in the federal court, it was ascertained that the two debts could not be made except against a surety of the high sheriff, and they were made by a sale of the lands of that surety, and the plaintiffs and the other creditor were paid. But, before the cause was ended, one of the sureties of the deputy sheriff became solvent; whereupon the surety of the high sheriff, whose lands had been sold, filed his petition in the federal court praying that this now solvent surety of the deputy sheriff, who was liable before himself for the two debts which had been paid, should be made to re-imburse himself in the amount of the two debts.

*Held,* that the federal court having, as a court of equity, jurisdiction over the parties before it, had jurisdiction to grant the prayer of the petition, though both the petitioning and respondent sureties defendant were residents of the same state.

**2. DECREE OF STATE COURT—DEFENCE IN FEDERAL COURT.**

*Held,* that the decree of the state court, which had not been appealed from, was conclusive against all who were parties to the suit in that court, and that it was not competent for them to make any defence in the federal court against the two debts decreed which it might originally have been competent for them to make in the state court, but which they did not make there.

**8. JURISDICTION OF FEDERAL COURT—CREDITORS' BILL.**

*Held,* that it was competent for the non-resident complainants in the federal court to bring in as defendants all the parties to the suit in the state court, including the other creditor, and, by a creditors' bill, to obtain a decree for the payment of both debts awarded by the decree of the state court.

In Equity.

HUGHES, D. J. Charles Selden was high sheriff of Powhatan county during the year March 3, 1847, to March 3, 1848, and gave bond to the county as such, with W. A. Turpin as one of

his sureties. Henry Gordon qualified as deputy sheriff under him, and gave bond to him as deputy, with Daniel Stringer and others as sureties. During the period of this service two estates were, in pursuance of law, committed to the sheriff, Selden,—that is to say, in fact, to the deputy sheriff, Gordon, —viz.: those of John St. John, in June, 1847, and that of John L. Cocke, in December, 1847. Henry Gordon was, in succeeding years, deputy for various high sheriffs, who held successively by annual tenures, and gave bond to each, successively, with various sureties. Amongst others he was deputy in the year March, 1851, to March, 1852, for Chastain Cocke. In that year, it is alleged by Ed. S. Brown, executor of Daniel Stringer, an execution came into his hands, in favor of Lancaster & Denby, against one E. K. Ronald, for the benefit of the estate of John L. Cocke, returnable to June rules; but, as the said Brown alleges, the same was not then returned, and was never returned, by which fact Gordon and his sureties, and his principal and his sureties, became liable. In 1860 Henry Gordon failed and became totally insolvent, and assigned all his property for the benefit of all his creditors in certain preferred classes. Charles Selden thereupon brought suit in equity in the circuit court of Powhatan county against Gordon and his sureties in the bond given in March, 1847, to indemnify him, seeking an account of all estates committed to the hands of the sheriff in the year of Selden's sheriffalty; but no personal representative of John St. John, or of John L. Cocke, was made party to the suit. The personal representatives of William A. Turpin, surety for Selden, and of Daniel Stringer, surety for Gordon, on their respective official bonds, were among those who were made parties defendant to the suit. At the October term, 1860, of that court, an account was ordered to be taken, and in due time thereafter an account was taken by a commissioner of the court, (Graves,) and a report thereof filed by the commissioner in April, 1861. This report, to which there was no exception, showed that there was due to the estate of John St. John the sum of $1,811.82, with interest from May 30, 1860; and to the estate of John L. Cocke, (from the non-return of the

execution heretofore mentioned,) the sum of $461.63, with interest on the quarter part thereof from December 31, 1853. The civil war then supervened, and with it stay laws, which remained in force until January, 1870. Nothing was done in the suit until September, 1875, when the court confirmed the commissioner's report of April, 1861. Executions were in due course issued for the amounts found due against Ed. S. Brown, executor of Daniel Stringer, and others liable, and were returned "no effects." Nothing further seems to have been done in this suit in the circuit court of Powhatan county, brought by Selden against Gordon and his sureties, and revived for and against representatives.

In October, 1876, James L. Howard and David P. Howard, legatees of John St. John, brought suit on the equity side of this, the United States circuit court for the eastern district of Virginia, for the recovery of the sum of $1,811.82, shown to be due from the sheriff of Powhatan to the estate of their testator, St. John, and made all the parties plaintiff and defendant in the aforesaid suit of *Selden* v. *Gordon*, in the circuit court of Powhatan, parties defendant, including the representatives of the estate of John L. Cocke, on whom process was duly served. Among these defendants were the representatives of William A. Turpin, who had been a surety of Charles Selden, high sheriff. To the bill filed by the Howards in this court, E. S. Brown, executor of Daniel Stringer, demurred, specifying as grounds of demurrer substantially the same objections, which are to be considered in the sequel, as raised to the petition, about to be mentioned, of William A. Turpin's representatives; the principal ground of demurrer being an alleged want of jurisdiction in this court to deal with the assets or liabilities of Daniel Stringer's estate. In April, 1877, this court, holding that Charles Selden and his sureties were liable to the (Howards) complainants for what had been adjudicated to be due from them to the estate of John St. John by the state court, directed an account to be taken before one of its own commissioners (Hudnall) to ascertain the full liabilities of Selden's estate as sheriff, to whom the sums for which it was liable were due, and to ascertain the

order of liability for these sums between the defendants to. this cause. Commissioner Hudnall, basing his inquiry upon the amounts found to be due in the suit in the state court, reported (September, 1877) that $1,811.82 principal, and $1,893.50 interest, were due from Selden and sureties, (including Gordon and his sureties,) to the legatees of John St. John, and $461.63 principal, and $563.44 interest, were due from the same to the estate of John L. Cocke,—all together, with costs, amounting to $5,127.18. This report was not excepted to by Stringer's representative, or any one else, and was confirmed by this court in October, 1877; and, by the same decree, the court overruled the demurrer of Daniel Stringer's executor on all the grounds relied upon in the specifications to the demurrer. The court further decreed, funds being then available from no other source, that the real estate of William A. Turpin, deceased, should be sold for the satisfaction of the whole amount for which Charles Selden's estate had been found liable. Accordingly, in due course of proceeding, Turpin's real estate has been sold, and brought more than the aggregate amount for which Selden and his sureties were liable; and the claim due the (Howards) complainants in this cause has been fully paid, and also the claim of John L. Cocke's estate.

But it having been alleged that Daniel Stringer's estate has now assets available for making good its liability, in part or in whole, in behalf of Gordon's to Selden's estate, and that of William A. Turpin, Selden's surety, the devisees of Turpin filed their petition in this court, praying to subject the estate of Daniel Stringer to the re-imbursement of their father's estate for the amount paid by it under the decree of this court. Answers were filed to this petition by formal parties to the suit. Whereupon the court referred the cause again to Commissioner Hudnall to report on the issues raised by the petition and answers, and this commissioner made a report in June, 1879, to which there was no exception, bringing down his report of September, 1877, to that date. The case seeming to be ready for a decree, this court entered one on the twenty-ninth of October, 1879, by which the devisees

of Turpin were allowed to recover from the estates of Henry Gordon and of his sureties (including Stringer) the sums which had been decreed to the Howards, and also to Cocke's estate, out of the proceeds of the sale of the real estate of William A. Turpin, deceased.

And now, Ed. S. Brown, executor of Stringer, comes into court, praying that the decree of October 29, 1879, be set aside, and he be admitted to make defence against the petition of Turpin's devisees. The said decree is accordingly set aside by consent; and the said Brown, being admitted to make defence and proceeding so to do, maintains that the prayer of the petition of the Turpins ought not to be allowed for the following reasons: *First.* The cause of action, asserted by the Howards and by the Turpins, arose before the third of March, 1848, and is therefore barred by the statutes of Virginia, which limit the liability of fiduciaries in such cases to 10 years after the cause of action arose. *Second.* It was not competent for the complainants in the suit (the Howards) to maintain a suit to recover in favor of the estate of John L. Cocke, because there was no privity of contract between the legatees of St. John and John L. Cocke, deceased. The heirs and distributees of Cocke, being residents in Virginia, cannot maintain a suit in this court, still less such a claim against their codefendants. *Third.* The estate of Charles Selden is solvent, and the remedy for payment coerced from his surety (Turpin) is against his estate. *Fourth.* The money decreed to the heirs of John L. Cocke is the proceeds of the execution of Lancaster & Denby, for Cocke's benefit, issued in 1851 to Henry Gordon, as deputy sheriff of Christian Cocke, which was not returned until after Gordon had become insolvent and had been sued by Selden, the liability for this money being on the sureties of Gordon as deputy of Chastain Cocke. *Fifth.* The plaintiffs in this suit, not being parties to the suit in the circuit court of Powhatan, are not bound by and can claim no benefit against said Gordon and his sureties from that suit. *Sixth.* The whole subject-matter was under adjudication in the circuit court of Powhatan county before the institution of this suit in the United States court, and it is not com-

petent for this court to assume jurisdiction in the premises. This sixth objection is not set out in the petitioner Brown's specifications of grounds of demurrer to the original bill, nor in his present petition for a rehearing; but he relies strenuously upon it in argument, and I will consider it along with the other five objections to the decree against him which has been set aside.

1. As to the first objection. It is elementary law that a surety is not liable for the default of his principal until that default and its amount are ascertained. The object of Selden's bill against Gordon and his sureties brought in the state court was to ascertain the fact and fix the amount of the default and to determine the liability of his sureties. This was not accomplished until the decree of the circuit court of Powhatan, in April, 1875, confirming its commissioner's report, was rendered. The statute of Virginia, Code of 1873, pp. 999–1000, c. 14, § 9, fixes the time from which the 10 years' limitation runs, by providing that "upon the bond of any personal representative of a decedent,   *   *   *   the right of action of a person obtaining execution against such representative,   *   *   *   or to whom payment   *   *   * shall be ordered by a court acting upon his account, shall be deemed first to have accrued from the return-day of such execution, or from the time of the right to require payment *   *   *   upon such order, whichever shall happen first." I can take no other view of the intention and effect of this law, passed for the protection of the sureties of fiduciaries, and not for that of the fiduciaries themselves, than that it is conclusive against the first objection which Stringer's executor raises against Turpin's petition.

2. As to the second ground of objection, it was certainly competent for the Howards, suing in a court of equity, seeing that the debts to St. John's estate and Cocke's estate were both to be satisfied out of estates supposed to be insolvent, or by sureties all believed to be insolvent or in difficulties, to bring Cocke's representatives, as well as all the other parties in the suit in the state court as defendants, into this court in order . that complete justice might be done. They brought a cred-

itors' bill—a bill for the benefit not only of themselves, but of the other creditor having claim against the estates of Charles Selden and his sureties, and of Henry Gordon, deputy of Charles Selden, and his sureties. It has never been contended that as between such creditors in a common suit in equity there must be a privity of contract. Besides, this suit of the Howards is not founded upon the bond either of Charles Selden and his sureties, or of Henry Gordon and his sureties. Those bonds do not enter into the present litigation. This suit of the Howards is brought upon the decree of April, 1875, pronounced by the circuit court of Powhatan, which settled the rights of all the parties to that suit, which was not appealed from, and which, as to those parties, stands irrevocable. The bonds of the sheriff and the deputy sheriff were merged into that decree. They are *res judicata.* They cannot again be brought into litigation. Nothing can be alleged against the decree of the circuit court of Powhatan but fraud or want of jurisdiction, or payment; and, in point of fact, such objections would be idle as against that decree. The suit here, in another jurisdiction, by non-residents of the state, is brought upon that decree; and that decree cannot be impeached collaterally in this court by the parties to it. It has here the quality of absolute verity. If the statute of limitations had barred suits upon the two fiduciary bonds upon which that decree was based, or if laches or staleness had been relied on, these defences should have been pleaded or made in the circuit court of Powhatan. They cannot be pleaded here.

3. The fact that the suit of the Howards in this court is brought upon the decree of the state court settling the rights and liabilities of the parties to that suit, disposes of the third objection of Stringer's executor. It is true that the representatives neither of St. John's estate, nor of Cocke's estate, were technical parties to the suit in the state court, though their testators or intestates were; and, not having been, as representatives, parties, they had an election whether or not to accept the determinations of that court in their favor. It was optional with the Howards to proceed upon the bond of Selden, or upon the decree of the state court; and it was

optional with the representatives of Cocke to consent to be made parties defendant to the suit of the Howards here brought upon the decree of the state court, and to accept or not the amount which this court ordered to be paid to them. But the fact that this option existed, and that the representatives of both estates elected to accept the Powhatan court's decree as determining their rights, does not put it in the power of Gordon's sureties to require them to repudiate that decree, and to require the Howards, so repudiating, to bring their action upon Charles Selden's bond. The Powhatan court's decree was conclusive against all the parties to it, of which Stringer's executor was one, and this executor is estopped by it, on the principle of *res judicata*, from making this third objection.

4. As to the fourth ground of objection, that is virtually disposed of in what has already been said. If valid, it should have been raised in Selden's suit for account in the circuit court of Powhatan. The suit here is upon a decree of that court which settled the liability of Gordon and his sureties to Selden or his estate, and to the estates of Cocke and St. John. The validity of that decree, even though it included a liability of Gordon and his sureties to some other high sheriff than Selden, cannot be impeached collaterally in this court or in the suit here. At best, moreover, the objection is technical only, and does not affect the merits of the case in a manner prejudicial to Stringer's executor.

5. The fifth objection strikes me as a *non sequitur*. All the parties to the suit in the state court are bound by the decree there. That decree determined, as against all these parties, that Gordon and his sureties, who were parties, owed to Cocke's estate and to St. John's estate, respectively, two defined sums of money. I believe Cocke and St. John were, in their life-time, parties to the suit; but that, on their death, during its progress, it was inadvertently not revived as against their representatives. Be this as it may, it was competent for that court to determine, as between the parties to that suit, the amount of Gordon's default as deputy sheriff, and to ascertain, as against him and his sureties, and as against

Selden and his sureties, to what persons or estates Gordon was in default, and fix the amount of the default due to those estates. The representatives of Cocke and of St. John might have come in afterwards and called these amounts into question. But it was certainly competent for them to accept as true the amounts decreed them. They have so elected; and Gordon and his sureties, as already said, are estopped from denying any fact or resisting any obligation adjudicated by that decree. The plaintiffs in the suit have had a right to bring suit on that decree of the Powhatan circuit court, even though they were not, in a technical sense, parties to that suit; and it is not competent for any party to that suit to object to their recovering under that decree.

6. I come, therefore, to the last, and, as I conceive, only question of novelty and difficulty in this matter; that is to say, the question whether or not this court, after entertaining the bill of complaint of the Howards as non-residents of the state against sundry resident defendants, and after having caused the non-resident complainants, as well as the other creditor of Gordon and his sureties and of Selden and his sureties, to be fully satisfied of their demands out of the proceeds of a sale of the lands of W. A. Turpin, a surety of Charles Selden, has jurisdiction now to require a surety of Gordon, since discovered to be solvent, to make good to Turpin the money which this court has thus exacted of him. I have been unable to find a precedent in which this precise question has arisen, and am thrown upon my own views of the law in passing upon it. That the circuit courts of the United States are courts of equity, vested with all the powers of the old English high court of chancery, except as modified by acts of congress and the rules prescribed by the supreme court of the United States for the regulation of their proceedings as courts of equity will not now be denied. See *U. S.* v. *Howland,* 4 Wheat. 115; *Boyle* v. *Zacharie,* 6 Pet. 658; *Livingston* v. *Story,* 9 Pet. 654; *Russell* v. *Southard,* 12 How. 139; *Neves* v. *Scott,* 13 How. 268; and many subsequent cases. Where, under the constitution and laws of the United States, a circuit court of the United States has jurisdiction of a cause in

equity, it has it as a court of equity possessing all the distinctive powers belonging to such a court. When once acquiring and taking jurisdiction of a cause in equity by virtue of the constitution and laws of the United States, it then becomes, as to the parties actually before it, clothed with the full jurisdiction of a court of equity, unaffected by the geographical limitations which controlled in its original acquisition of the cause. Its jurisdiction once properly acquired over the parties properly before it, that jurisdiction then becomes that of a court of equity proper, and extends to embrace all acts which it is proper for a court of equity to perform in the cause before it; for where a court of equity has gained jurisdiction of a cause for one purpose, it may retain it generally for relief, such as a court of equity may properly grant in the ordinary exercise of its authority. *Armstrong* v. *Gilchrist*, 2 John. Cases, 424; *Russell* v. *Clarke's Ex'rs*, 7 Cranch, 69. Among these it is a cardinal principle that a court of equity not only may but should do complete justice as between all parties before it, giving to each party the redress which *ex equo et bono* belongs to him, rather than compelling him to go out into another forum for their establishment, or to bring a new suit before itself for a redress which itself ought to afford in the preceding suit. See Mitford's Pleadings, 164, where Lord Redesdale speaks of this as a cardinal rule of equity, from which most of the rules in equity concerning parties to suits spring. See, also, Story's Eq. Pl. §§ 72, 174, 176, *et seq.*, where it is said that a court of equity likes to do complete justice and not by halves; and that it will, on this principle, bring in the party who is primarily liable for a debt in aid of one who is only secondarily liable, in order, without further litigation, to accomplish in one suit complete justice between all the parties, and thereby to prevent a multiplicity of suits. I think, therefore, that this court, under its general powers as a court of equity over all parties who were properly brought before it at the beginning of the cause, may now, having been made to know by the petition of Turpin that a surety of Gordon, liable before him for the debts which Turpin's land was sold to pay, has become

able to make good this amount, or a part of it, to him, has jurisdiction to require that surety of Gordon to make contribution as prayed for. That such contribution may, on the merits of the case, be required of Stringer's executor, is too well settled to be the subject of controversy. See Story's Eq. Jur. §§ 496, 497, 498; see, also, *Wayland* v. *Tucker*, 4 Gratt. 268, and Daniell's Ch. Pr. 282–3.

I will sign a decree overruling the demurrer, and granting the relief prayed for by Turpin.

NOTE. See *People's Bank* v. *Winslow*, 1 Morrison's Transcripts, 23.