13461

BILTRITE BLDG. CO. *ET AL.* v. ELLIOTT *ET AL.*

(165 S. E., 340)

*Messrs. R. E. Whiting, Thomas, Lumpkin & Cain, W. C. Wolfe* and *John I. Cosgrove;* for plaintiffs, 

*Messrs. Benet, Shand & McGowan,* for defendants. 

August 1, 1932.

The opinion of the Court was delivered by MR. W. C. COTHRAN, Acting Associate Justice.

Through the medium of the original jurisdiction of this Court the plaintiffs, by a verified complaint and a rule to show cause, seek an injunction against the defendants to prevent them from instituting actions against the stockholders of the People's State Bank of South Carolina to collect the amounts due by the stockholders to the depositors upon what is generally termed "stockholders' liability." In the present condition of banking affairs in this State and from the many experiences of stockholders in the past few years, it would appear rather superfluous to give a definition of "stockholders' liability." At the risk, however, of repeating what every one must surely know, we venture to say that it is a liability of the stockholders of the banks to pay to depositors one dollar for each dollar of stock owned by them. This liability is imposed by the Constitution of this State in Article 9, § 18.

Some of the facts, with their dates, will be set forth for a complete understanding of this controversy.

On January 2, 1932, the Peoples's State Bank of South Carolina was closed by resolution of the directors and its affairs turned over to the state bank examiner.

On January 27th the defendants herein were appointed receivers by order of Hon. J. Lyles Glenn, United States District Judge. Notice of appeal from this order was duly given through the office of the Attorney General of South Carolina.

On April 22d, a hearing was had before the United States Circuit Court of Appeals for leave to docket and dismiss the appeal. This motion was granted *nisi* and, the condition not having been complied with, the appeal was dismissed.

We may here say that in so far as the record now before us in concerned, but carefully refraining from passing upon the jurisdiction of the Federal Court to appoint the receivers, the defendants are the receivers of the People's State Bank of South Carolina by an order from which no appeal has been taken, and are clothed with such power and authority as were given them by the order appointing them and by the general federal laws applicable to such appointments.

On April 25th the receivers filed their petition with Judge Glenn praying for authority to bring suits against the stockholders on their statutory liability, and on the following day Judge Glenn signed an order authorizing and directing the receivers to collect the stockholders' liability.

Also on April 26th, Hon. M. M. Mann, Circuit Judge, signed an order restraining all depositors, other than those in a suit then pending in the Court of Common Pleas for Richland County, from attempting to enforce liability against the stockholders in any other action; the pending suit having been brought by the plaintiffs herein for the benefit of themselves and all other depositors in like plight.

The order of Judge Glenn was filed in the office of the district Court in Charleston on April 27th, the same day the order of Judge Mann was filed in the clerk's office for Richland County.

On April 28th Circuit Judge Mann appointed Joseph L. Nettles, an attorney of Columbia, receiver of the fund to be collected by the plaintiffs in their pending action, and on the next day Joseph L. Nettles was appointed receiver for the same purpose by an order of Circuit Judge W. H. Townsend; the occasion for the double appointment of Mr. Nettles not being apparent from the record. Nor is he a party to this action.

The order directing the receivers to show cause before this Court was dated April 30, 1932, and pursuant thereto a full hearing was had before this Court on May 14th upon the complaint by the plaintiffs and the return to the rule by the defendants.

It is conceded by the attorneys representing both sides of this action that the sole question before this Court is the construction of the Act of 1929 (Act March 16, 1929, 36 St. at Large, p. 199), which appears as Section 7855 of the Code of 1932. The question is further brought to a focus by limiting it to the first sentence in subdivision 6 of that section. In other words, is the phrase "any receiver" broad enough to cover receivers appointed by the federal Court to take over and administer the affairs of a state bank?

The Act in question appears simple enough at a glance, but an unprecedented and totally unexpected condition has arisen because of the order of the federal Court in appointing the receivers. Elaborate arguments have been filed by the attorneys and much time and thought have been expended by all concerned in the decision of this case.

The Act contains eight sections, and these sections cover the following subjects:

Section 1 provides for the nomination by the depositors and unsecured creditors of one or more persons to act as receivers and for the Court to appoint such nominee in the absence of a valid objection.

Section 2 provides that all receivers appointed under the provisions of this Act shall receive the compensation therein mentioned.

Sections 3, 4, 5, 7 and 8 are not involved in this cause and throw no material light upon the question to be decided.

Section 6 is the *casus belli* and around it the battle has been, and is now being, fought. This section gives to "any receiver appointed to liquidate the assets of any closed State bank" the power to demand the statutory liability of the stockholders and to enter suit if necessary.

As before stated, can "any receiver" include federal receivers?

In undertaking the preparation of this opinion the first impression was that the words "any receiver" in Section 6 could only refer to any receiver ap-

pointed under this Act, for the reason that the word "any," being most general in its meaning, must refer to the particular descriptive words preceding it in the first section and that its meaning must be so restricted under the doctrine of *ejusdem generis. Ex parte Leland,* 1 Nott & McC., 460, and subsequent cases. The impression was also gained that since the Act should be construed as a whole, effect being given to every portion of it, to permit chancery receivers, not appointed according to the provisions of the Act, to exercise all of the powers of the receivers provided for in this Act, would, in effect, nullify the requirements of the Act as to the method of appointment. While these points apparently were not raised in the cases of *Branchville Motor Company v. Adden,* 158 S. C., 90, 155 S. E., 277, 281, *Ex parte Love,* 158 S. C., 249, 155 S. E., 428, and *Fischer v. Chisolm,* 159 S. C., 395, 157 S. E., 139, yet these cases hold that a chancery receiver is fully empowered to act under this statute and the correctness of that holding is not now being questioned.

The defendants argue from these cases that since this Court has construed the words "any receiver" as appearing in the Act to embrace other chancery receivers that therefore federal chancery receivers should likewise be included. That the gate was opened rather widely by these cases we (the writer) are forced to admit, but we will endeavor to show that free admittance to all was not intended; that admission must be denied to federal receivers.

The General Assembly of South Carolina has seen fit to enact the statute above mentioned for the protection of its citizens who may be unfortunately interested in closed South Carolina banks. It has not undertaken to prescribe any rules or regulations for closed national banks, thereby leaving the administration of the affairs of such banks to the source of their creation. Nor do we know of any law which gives the federal Court the right to take charge of a South Carolina corporation and administer its affairs through its chancery receivers according to the pro-

visions of South Carolina law. On the contrary, the federal Courts of equity have no more right to adopt the South Carolina equity procedure than the South Carolina Courts would have to forsake their laws and enter the federal forum. The federal equity practice must be uniform in the several states, and it needs neither argument nor the citation of authority to prove the complete destruction of this uniformity should the federal Courts attempt to adopt the methods of equity procedure in the various states. This idea of uniformity has been repeatedly held by the federal Courts. In *Green's Administratrix v. Creighton,* 23 How. (64 U. S.), 90, 105, 16 L. Ed., 419, it is said: "In the organization of the Courts of the United States, the remedies at common law and in equity have been distinguished, and the jurisdiction in equity is confided to the Circuit Courts, to be exercised uniformly through the United States, and does not receive any modification from the legislation of the states, or the practice of their Courts having similar powers. *Livingston v. Story,* 9 Pet., 632 (9 L. Ed., 255)."

It is held in *Payne v. Hook,* 7 Wall. (74 U. S.), 425. 430, 19 L. Ed., 260: "If legal remedies are sometimes modified to suit the changes in the laws of the states, and the practice of their Courts, it is not so with equitable. The equity jurisdiction conferred on the Federal Courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union."

See, also, *Henrietta Mills v. Rutherford County,* 281 U. S., 121, 50 S. Ct., 270, 74 L. Ed., 737.

That the federal Court is not controlled in equity matters by statutes of the states seems conclusively settled by decisions of the United States Supreme Court. In *Dodge v. Tulleys,* 114 U. S., 451, 12 S. Ct., 728, 731, 36 L. Ed., 501, it is held as follows: "But, while contract rights are settled by the law of the state, that law does not determine the procedure of Courts of the United States sitting as Courts of

equity, or the costs which are taxable there, or control the discretion exercised in matters of allowances. Those Courts acquire their jurisdiction and powers from another source than the state. There is no statute of Nebraska in respect to the matter. Even if there were one expressly prohibiting Courts of equity from making allowances to trustees or their counsel, such prohibition would not control the proceedings in Federal Equity Courts." See, also, *Tullock v. Mulvane*, 184 U. S., 510, 22 S. Ct., 372, 46 L. Ed., 657.

It has been consistently held by this Court since the decision in *Parker v. Carolina Sav. Bank,* 53 S. C., 589, 31 S. E., 673, 69 Am. St. Rep., 888, that the fund derived from the liability of stockholders is not an asset of the closed bank and that the receiver of such closed bank has not power to enforce this liability. Such benefit as may be derived from this liability belongs to the depositors, and neither the receiver nor the bank has any interest whatsoever in the fund so obtained. Much confusion resulted from this condition, and the Act of 1929 was passed to fix definitely the rights and powers of receivers of closed state banks. Prior to the passage of this Act, receivers, both state and federal, were wholly without authority to enforce this liability. Since the passage of the Act, state receivers have been permitted to function under its terms, whether appointed under its provisions or not. The *Love* and *Adden cases, supra.* Federal receivers are not allowed to look to the Act for their compensation. They are not, and cannot be, bound by the compensation fixed by the Act and the only manner in which the compensation could be the same is for the federal Judge, *in his discretion,* to say that the provisions of the Act are reasonable; thereby adopting in his discretion the same amount which for a state receiver would be governed by statute. See *Bein v. Heath,* 12 How., 168, 13 L. Ed., 939.

It is nowhere contended that the federal receivers were appointed under the provisions of the Act of 1929. They are

now resorting to one portion of that Act and claiming to be governed thereby only when the result to be obtained is not available under the federal law. Does any one suppose that these receivers will demand as a statutory right the compensation fixed in the Act for services for receivers? We hardly think so; and yet they claim that the federal Court will recognize the compensation fixed in the same Act for collecting statutory liability. This, we have endeavored to show, the federal Court cannot do.

The right to enforce the stockholders' liability is clearly not in the federal receivers for the reason that the only authority for the enforcement of this liability by receivers is derived from the Act of 1929, which, by its terms, refers to state, not federal, receivers.

A prime element in the construction of statutes is the legislative intent. It is not necessary to cite authorities upon this point as it should be conceded by all parties. As before stated, the Act of 1929 was passed to clear up the confusion resulting from the decisions holding that receivers did not have authority to collect the statutory liability from the stockholders. Under the old rule the suit must be brought separately from the duties of the receiver. The *Adden case, supra,* sets out in full the necessity for the legislation. The General Assembly, in the passage of the Act, was dealing solely with state banks and state receivers. It had no authority to do otherwise. It could not prescribe duties and compensations for federal receivers; therefore, it cannot soundly be contended that the General Assembly intended to do—include federal receivers in the provisions of the Act—what it did not have the power to do. Rather let it be said that the intention was to include only those subjects over which it had jurisdiction, namely, state banks and state receivers. In the preparation of this opinion we have studied carefully the decided cases on the various subjects, and while we have not used a great many citations from the authorities, we feel that the general result is in full accord with those decisions.

The order of injunction from the federal Court prevents any state receiver from attempting to collect the liability from the stockholders, but a most thoughtful pronouncement in the *Adden case* supplies the depositors with a perfect remedy. It is: "It is conceivable that circumstances might arise which would justify the Court in permitting a creditors' bill by the depositors against the stockholders for their protection, in the event that relief could not be had through the receiver."

Having determined that the Act of 1929 is not broad enough in its scope to embrace federal receivers and that it was never the intention of the General Assembly to enact a law under which federal receivers could operate, it is the judgment of this Court that this return of the defendants be, and is hereby, declared insufficient and that the injunction as prayed for by the plaintiffs be, and the same is hereby, made permanent.

Messrs. Justices Stabler and Bonham concur.

Mr. Justice Carter and Mr. Circuit Judge C. C. Featherstone, Acting Associate Justice, dissent.

Mr. Justice Bonham (concurring) : We are not concerned with, and are not considering in this case, the question whether the federal Court had jurisdiction and power to take over and administer the affairs of a state bank in process of liquidation. We are considering solely the question whether that Court has power to authorize and direct the receivers appointed by it to receive and liquidate the general assets of the bank, to demand, receive, and administer the proceeds of the stockholders' liability to the depositors of the bank.

Prior to the passage of the Act of the General Assembly of South Carolina, approved March 16, 1929, some confusion existed as to the proper method of enforcing the collection of the liability of the stockholders of a defunct bank to the depositors thereof. Since the adoption of the Constitution of 1895, and its construction as it relates to

the matter under discussion, it has been the recognized law of this jurisdiction that the stockholders' constitutional and statutory liability was not an asset of the bank, but that it inured solely to the benefit of the depositors. In a number of cases this Court has held that: "The liability of stockholders to depositors, under the Constitution and statute, is not an asset of the bank, but is the basis of an individual, personal, joint right in the depositors, with which the corporation, or its receivers, or its board of liquidating trustees have absolutely nothing to do."

Since neither the Constitution nor the statutes laid down, nor suggested, the appropriate legal process by which the depositors could enforce the collection of this liability, there arose uncertainty and confusion thereabout. Thereupon this Court announced the opinion that there was vested in the depositors the right to bring their action in the nature of a creditors' bill to collect the stockholders' liability. In such proceedings it was the custom to have appointed a receiver, or receivers, to hold and disburse the funds thus collected. The distinction between the receiver of the general assets of a bank and the receiver of the funds collected on the stockholders' liability was clearly understood, and was recognized by this Court in the case of *Ex parte Rizer*, 165 S. C., 487, 164 S. E., 131.

Thus the matter stood when the Act of 1929 was passed. Section 6 of that Act provides: "That any receiver appointed to liquidate the assets of any closed state bank shall, *under the authority of this Act,* when it is necessary to * * * have full power and authority to demand of such stockholders," etc.

In the case of *Branchville Motor Co. v. Adden,* 158 S. C., 90, 155 S. E., 277, this rule is laid down: "Natural and safe guide to legislative intent in passing statute is statutory and judicial status of subject at time of enactment." The italicized words in the above paragraph construed in the light of "the statutory and judicial status of the subject" would seem to

be susceptible of but one reasonable interpretation, viz., that it would thereafter be unnecessary to appoint two receivers —one of the general assets of the bank and one of the funds derived from the stockholders' liability—because this Act provided that *any one* of the receivers (there might be one or more) appointed under it to take charge of and liquidate the general assets of the bank should also have power and authority to enforce the collection of the stockholders' liability. *Any receiver* empowered to collect and liquidate the general assets of a closed bank, *and* the funds derived from the stockholders' liability, must first be named by the general creditors and depositors of the bank, and approved by the Court of Common Pleas. Without the imprimatur of this approval and appointment by the Court no receiver of the general assets could touch the funds derived from the stockholders by the enforcement of this constitutional and statutory liability. That the receivers appointed in this case by the federal Court to take control of and liquidate the general assets of the bank were of the opinion that that appointment did not carry with it the authority to them to collect and distribute the stockholders' liability fund is made manifest by the fact that they applied to the federal Court for an order which should specifically give them such power. That that Court was without power to grant such order is made plain by the able main opinion in this case.

I concur in that opinion.

Mr. Circuit Judge C. C. Featherstone, Acting Associate Justice (dissenting):

Being unable to concur in the opinion of Mr. Acting Associate Justice Cothran, I give hurriedly and briefly my reasons:

The sole question is: Are the defendants, the receivers, authorized to bring the action against the stockholders, under and by virtue of the Act of 1929, now Subdivision of Section 7855, Code of 1932?

That Act gives *"any* receiver appointed to liquidate the assets of any closed State bank" (italics added), the right to bring such action.

The language, I venture to think, is so plain that we need not resort to any rules of construction to ascertain its meaning.

Indeed, it is only where uncertainty and ambiguity exists that resort is had to rules to ascertain the meaning of a statute.

As Chief Justice Marshall said in *U. S. v. Fisher,* 2 Cranch, 358, 390, 2 L. Ed., 304, "Where the intent is plain, nothing is left to construction."

I cannot imagine language being plainer than that employed by the Legislature.

It is not for the Courts to legislate; theirs is the duty to carry out and enforce the legislative will.

Mr. Justice Cothran invokes the rule of *ejusdem generis,* which as said by our Court in *Vassey v. Spake,* 83 S. C., 567, 65 S. E., 825, 826, does not apply when "the intention is clear, and there is no room for construction."

I see no authority, whatever, for reading into the Act the words "appointed by the State Court, after the terms of the Act, above set out have been complied with," which is what the construction contended for requires.

The plain unambiguous language of the Act, as I see it, does not authorize the addition of such words, in order to get what the Legislature meant.

It is admitted that the defendants are "receivers of a closed State Bank."

This Court cannot inquire into the legality of their appointment. The federal Court made the appointment, and there has been no appeal therefrom.

The Court in *Branchville Motor Co. v. Adden et al.,* 158 S. C., 90, 155 S. E., 277, has said that the receiver, and he alone, must bring the action. It can no longer be brought by the depositors.

In *Ex parte Traynham et al. v. Smith et al.,* 158 S. C., 249, 155 S. E., 428, the Court said that depositors cannot bring the action until the receiver, upon demand, has refused to do so.

Any receiver can bring the action; a receiver must bring the action; depositors cannot do so, until the receiver has refused, upon demand—so run the decisions of this Court.

The question of additional costs, if the fund be administered by the receivers in the federal Court, is, I think, aside from the real question; but, it may be said, in passing, that the defendants, in their return, have made it known that they expect to receive only the compensation fixed by the Act, by which they would be bound; but, in addition to that, I do not see how they could claim the benefits of the Act and repudiate its burdens.

If they take a part of the Act, they must take it as a whole. I think the injunction should be refused and the complaint dismissed.

MR. JUSTICE CARTER concurs.