# Alabama Coal & Coke Co. *et al. v.* Shackelford *et al.*

### *Bill in Equity for the Appointment of Receiver of Corporation.*

1. *Receiver of corporation; what constitutes no ground for appointment.*—The fact that the directors of a corporation in office are holding over after the year for which they were elected; in default of an election of their successors by the stockholders, constitutes no ground for the appointment of a receiver of said corporation.

2. *Same; same.*—The facts that directors of a corporation have voted and paid to the estate of a deceased kinsman, who was a director, money of the corporation which they had no authority to so appropriate, or that said directors had voted

[Alabama Coal & Coke Co. *et al.* v. Shackelford *et al.*]

to themselves salaries as officers of said corporation, in abuse of their trust, or that they have sold the lands of the corporation in fraud of it to other corporations in which they were interested, constitute no grounds for the appointment of a receiver of said corporation.

3. *Same; same.*—The facts that stockholders of a corporation are not allowed access to the books and papers of a corporation or that the directors refuse to discuss the material facts connected with the corporate business, constitute no grounds for the appointment of a receiver of said corporation.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellees, W. C. Shackelford and Jos. V. Allen, against the appellants, the Alabama Coal & Coke Co., a corporation, Adler & Co., a co-partnership, and Morris Adler, Samuel M. Adler and Edgar L. Adler. The following facts were averred in the bill: The Alabama Coal & Coke Company was a corporation duly organized under the laws of the State. Its capital stock consisted of five hundred shares of the par value of $100 each. The general purpose and nature of the business of said corporation was to own, sell, buy and deal in coal lands. The complainant, W. C. Shackelford, was the owner and holder of 248 shares of the capital stock of said corporation, and the complainant, Jos. V. Allen, was the owner and holder of two shares of the capital stock. Adler & Co., a co-partnership composed of Morris Adler, Samuel M. Adler and Edgar L. Adler, was the owner and holder of 247 shares of the capital stock of said corporation, and each of said partners was the holder and owner individually of one share of said capital stock. Morris Adler, Samuel M. Adler and Edgar L. Adler are the only directors of said corporation and they became such in the year 1900 in succession to other persons who had been before that time directors, but they have never been elected as such directors by any stockholders' meeting of said corporation. Morris Adler is president, and Samuel M. Adler is secretary and treasurer of said corporation.

In October and November, 1900, there were meetings of the stockholders of said corporation, which were held for the purpose of ratifying the sale of certain lands, and

15c

there was during February, 1901, a meeting of the stockholders which was held for the purpose of correcting errors in a sale theretofore made. The property and assets of the corporation consisted of coal and other mineral lands and mineral rights and monies derived from the sale of lands which are and have been in the hands of Adler & Co. The only duties incident to any of the officers of the company are the looking after these lands, listing and paying taxes thereon, and selling or contracting for the sale of land from time to time.

On March 30, 1901, Morris Adler, Samuel M. Adler and Edgar L. Adler as directors of said corporation, held a meeting of the directors and voted a salary of $100 per month to the president and $50 per month to Samuel Adler as secretary and treasurer, and at the same meeting said Adlers as directors voted to the estate of Albert Adler, who had been a director, the sum of $1,000 in payment of services alleged to have been performed by him for the corporation, although there was no contract or agreement between said company and said Albert Adler in respect of said alleged services. Complainants are informed and believed that he rendered no services to said company. Said salaries so voted are exorbitant and wholly out of proportion to the value of the services rendered by said Adlers. In March, 1902, the complainant, W. C. Shackelford, purchased 250 shares of said capital stock, and thereafter transferred and assigned to said Allen two of said shares. After the purchase of said stock by the complainants they demanded and were granted an investigation of the books and affairs of the company, and ascertained that the last meeting of the board of directors of said corporation was held on March 1, 1901, as aforesaid, and that no general or annual meeting of the stockholders had been held since the Adlers acquired an interest in said corporation, which was in the month of September, 1901. On April 22, 1902, there was held a meeting of the stockholders of said corporation, which was called at the request of Shackelford for the purpose of electing a board of directors and receiving a report from the officers of said company as to its affairs, etc. At said meeting of the stockholders all the

stock was represented. Morris Adler, as president, submitted a report and the complainant Shackelford offered a resolution that the report be not approved and that the sale of real estate described in said report be not ratified and confirmed. Edgar Adler offered a substitute for the Shackelford resolution to approve said report and to ratify and confirm the sale of the lands, and upon a stock vote being taken there was a tie, complainants voting in favor of the resolution not to approve of the report, and the respondents voting in favor of the substitute. At said stockholders' meeting a set of by-laws for the holding of the meetings which was offered by Shackelford were adopted. In balloting for the directors at said meeting of the stockholders, the respondents voted their 250 shares for the election of themselves as directors and the complainants voted their 250 shares against the election of two of said Adlers, and there was no election. Subsequent to this meeting the complainant Shackelford, for the purpose of settling and adjusting the differences between the complainants and the defendants in the management and control of said corporation, wrote to Morris Adler and suggested that another stockholders' meeting be held; that the by-laws be amended so as to make the board of directors consist of four stockholders instead of three, and that two of the Adlers be elected as directors and the complainants be also elected as directors. Adler declined to call the stockholders' meeting and refused to consent that the complainants have equal representation on the board of directors, and the respondents, Adlers, are in the exclusive possession and control of the business and affairs of the corporation and have wholly refused to permit complainants, although owning an equal amount of the stock, to have any part or voice in the control or management of said corporation. Said corporation has no source of income except from the sale of land, and the payment of the salaries to said Adlers, together with the necessary taxes and expenses, will inevitably result in said Adlers absorbing the entire assets of the corporation. As matters now stand it is impossible for such corporation to do anything. If this state of affairs continues, the value of the property will become greatly appreciated and

complainants will be submitted to great and serious loss; that no sales of land can now be made although there is now a demand in coal lands, but in the present state of feelings between the complainants and respondents there is no prospect of any fair adjustment of the differences.

The prayer of the bill is that the complainants be granted "a temporary writ of injunction restraining and enjoining said Adler & Company, Morris Adler, Sam M. Adler and Edgar L. Adler and their agents and attorneys from the further control and management of the business and affairs of said Alabama Coal & Coke Company, and that your honor will appoint a receiver of the property and assets of said Alabama Coal & Coke Company for the purpose of holding and disposing of the same, until the further orders of this honorable court, and that your orators may have such other, further and different relief in the premises as the nature of the case may require and to your honor may seem meet."

The averments of the bill were verified by affidavit of Shackelford.

The defendants answered fully and under oath, denying any mismanagement, and setting out in detail the purchase of all the stock of the company by themselves and certain New Orleans parties, and averred that the complainant Shackelford purchased his 250 shares of stock from the New Orleans parties subsequent to the recovery of a judgment by the Alabama Coal & Coke Co. against the Ivy Leaf Coal & Coke Co., of which latter company the complainant Shackelford was president. They also averred in their answer that at the meeting of the stockholders held after the complainants had acquired their stock in said Alabama Coal & Coke Company, there was a resolution introduced by said Shackelford and adopted, which provided that there should be no sale of lands belonging to said company without the consent or ratification of the majority in value of the holdings of all the stockholders. The answer of the defendants also set out in detail the recovery by the Alabama Coal & Coke Company of a judgment against the Ivy Coal & Coke Company for $12,000, and

that the complainant Shackelford was a surety on the supersedeas bond given by the Ivy Coal & Coke Company for an appeal to the Supreme Court, and also set out in detail the facts relating to the recovery of a judgment in an action of ejectment against said Ivy Coal & Coke Company. There was also affidavit made by each of the parties to the suit. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the submission of the cause upon the bill, the application for the appointment of a receiver and upon the answer and affidavits filed, the chancellor rendered a decree granting the complainants the relief prayed for and ordered the appointment of the receiver upon the complainants entering into a bond with sufficient surety to be approved by the register.

From this decree the respondents appeal and assign the rendition thereof as error.

SMITH & SMITH, for appellants.—"The exercise of the power to appoint a receiver must rest very largely within the sound legal discretion of the court, and should be brought into activity always with great caution and circumspection; especially when invoked against a party in possession under the legal title.—*Hughes v. Hatchett*, 55 Ala. 631; 4 Kerr on Receivers, 115; *Brierfield Iron Works v. Foster*, 54 Ala. 622; *Ex parte Walker*, 25 Ala. 81."—*Micou v. Moses*, 72 Ala. 441; *Bard v. Bingham*, 54 Ala. 463; *Randle v. Carter*, 62 Ala. 102-3; *Ft. Payne Furnace Co. v. Ft. Payne Coal & Iron Co.*, 96 Ala. 472; 11 So. Rep. 439.

A mere disagreement among stockholders as to the management of corporate property is insufficient.—*Little Warrior Coal Co. v. Hooper*, 105 Ala. 665; *Bridgeport Co. v. Tritsch*, 110 Ala. 274; *Roman v. Woolfork*, 98 Ala. 219; *Taylor v. Decatur M. L. Co.*, 112 Ala. 449; Cook on Corporations, § 746; *North American Land & Timber Co. v. Watkins*, 48 C. C. A. 234; Smith on Receivers, §§ 220, 226; 23 Am. & Eng. Encyc. (2d ed.), 1021, 1923.

There is a full board of directors, and this board, and not the stockholders, transact the corporate business.

[Alabama Coal & Coke Co. *et al.* v. Shackelford *et al.*]

2 Cook on Corporations, § 709; *Moses v. Tompkins,* 84 Ala. 614.

LONDON & LONDON, *contra.*—Where the management of a mere trading corporation is in such condition that its business cannot be conducted with advantage to the stockholders, equity will interfere by a receiver.—Beach on Receivers, § 87; 2 Cook on Corporations, p. 1385, § 685; and the principle cases cited; *Jasper L. Co. v. Wallis,* 123 Ala. 652; Morawetz on Corporations, § 237; *Fisher v. Essex Bank,* 5 Gray (Mass.) 373; *Peabody v. Flint,* 6 Allen (Mass.) 52; *Farrington v. Tennessee,* 85 Ala. 686; *Bacon v. Robertson,* 18 How. 486; *Taylor v. Miami Experimenting Co.,* 5 Ohio, 166.

MCCLELLAN, C. J.—It is no ground for the appointment of a receiver of a corporation that the directors in office are holding over after the year for which they were elected in default of the election of their successors by the stockholders. And the cause of such default is of no consequence. It may be that the stockholders desired the directors to continue in office and it was inconvenient to meet and re-elect them, or that an election was permitted through mere inadvertence, or that there were such dissensions among the shareholders and the holdings of the dissentients were so equally divided that a majority could not be brought to the support of any set of individuals for the directorate; but whether the failure to elect resulted from any one or the other of these causes or any other whatever, it would leave and continue in office—whether *de jure* or *de facto* is immaterial—directors competent to conserve the property and carry on the business of the corporation, and there would be no necessity to take the concern out of their hands and commit it to a receiver. If the corporation had no directors and none could be elected, a different case would be presented. If there were directors among whom such dissensions existed as that the corporate functions could not be discharged and its assets and business were imperiled in consequence, necessity for the intervention of the court of chancery by the appointment

of a receiver might arise. (*Sternberg v. Wolff*, 39 L. R. A. 762.) Or if there are two sets of men, each claiming to constitute the directory, the claim of each being of substantially doubtful validity, and each is scrambling for the possession of the corporate property and the control of the corporate business, a temporary receiver may be appointed at the suit of the stockholders. (*Jasper Land Co. v. Wallis*, 123 Ala. 562.) In all these cases there is strangulation and paralysis of the corporate functions and resulting probability of serious detriment to its property and business, which can be averted only by the appointment of a receiver. This is not true of the case first stated, which is the case at bar. Here there is no strangulation, no paralysis. Here is a board of directors in office, in undisputed possession and control of the corporate assets and in the exercise of all corporate powers and functions; and they are legally competent to conserve the corporate property and carry on its business. Their acts as directors are as efficacious and valid as if they had been elected at the last annual date for the election of directors. They are in the same sense and to the same extent trustees for the stockholders and answerable to them for any breach or abuse of the trust. The property in their hands is in no more peril of mal-administration and the business of the concern is no more likely to be improperly carried on than if they had been elected on yesterday. Being trustees, if they have voted to pay and paid to the estate of a deceased kinsman who was a director moneys of the corporation which they had no authority to so appropriate, the complainant as a stockholder has the right to call upon them to sue in the name of the corporation for its recovery, and, they declining, he may file a bill in his own name on behalf of the corporation to that end. So, too, if they as directors have voted to themselves salaries as officers of the corporation in abuse of their trus' the complainant has like rights and remedies. If they undertake to sell the lands of the corporation in fraud of it to other corporations in which they are interested—of which there is a bare innuendo in Shackelford's affidavit—the court of chancery is wide open to Shackelford both for discovery of the facts and relief upon them.

Moreover, at Shackelford's instance the stockholders adopted a by-law, which he insists is valid and operative, to the effect that no lands of the corporation should be sold without the consent, by ratification or confirma tion, of a majority in value of holdings of all the stockholders, and thus assurance is made doubly sure that no receiver is necessary to protect his interests in respect of the sale of lands. Then there is something in the bill about complainant not being allowed access to the books and papers of the corporation. These averments were not only not proved but affirmatively disproved on the hearing; and were they true the remedy is plain, adequate and complete short of the appointment of a receiver. Then, too, it is said that the directors refuse to disclose material facts connected with the corporate business, the value of its lands and the like. This too fails of proof and constitutes no ground for a receiver if true; and, moreover, the complainant swears that he would not have believed such disclosures if they had been made, and that he so informed the directors.

It is made to appear in the case that practically the only business of this corporation was the collection of a large judgment it had recovered for the taking of coals cut of its lands, the settling of titles to its lands, the prosecution of an action for the recovery of certain parcels of it held by a trespasser, and the sale of its lands. The directors in office are not only fully competent to carry on all this business, but they are prosecuting it diligently and properly so far as appears. If any difficulty should arise in the sale of the lands, it can only come from Shackelford's own unwarranted and capricious objection as a stockholder under the by-law adopted at his instance and to which we have referred above; and surely he cannot invoke the action of a court of equity to meet a necessity thus produced by his own wrong.

As to the action prosecuted by the corporation for the recovery of parcels of its lands, and which is now pending in this court on appeal from a judgment in its favor, it transpires that the Ivy Coal & Coke Co. is the defendant in that action, and Shackelford is the president

[Alabama Coal & Coke Co. *et al.* v. Shackelford *et al.*]

of that company. In respect of the money judgment in favor of this corporation and which it was endeavoring to collect when this bill was filed, it is to be noted that said Ivy Company of which Shackelford is president is the defendant therein, and that Shackelford himself is personally liable thereon as the company's surety on supersedeas bond for appeal to this court where the judgment was affirmed. As to these matters it would obviously not be the most appropriate thing imaginable for him to exert a controlling influence in the conduct of the corporation although he owns one-half of its capital stock. He sought a negatively controlling power by insisting that the number of directors should be increased from three to four and that he and an agent of his should be given two of the places. This might well have produced or resulted in a deadlock and the paralysis of the corporate business; and there is indeed room for suspicion that the motive of this proposal was to thus throw the corporation into convulsions and then call in a receiver to doctor the convulsions. However that may be, in view of the antagonistic attitude of Shackelford to the corporation in respect of said action of ejectment and said money judgment, in connection with the further fact that he bought into the company pending those actions and from a third party who appears to have been in harmony with the directory, it is not surprising that the holders of the other half of the stock, who are the directors now in office, should have declined this proposition of Shackelford; and there is no room to say that in so doing they were not faithfully representing the interests of the corporation. Their counter proposition to make him one of the three directors was all that fairness could require from them.

On the case submitted to the chancellor and now again submitted to us, we find no necessity for the appointment of the receiver. The order appointing him must be reversed, and an order will be here entered denying and dismissing the application for the appointment.

Reversed and rendered.