# Ensley Development Co., *v.* Powell.

### *Bill for Injunction and Receiver.*

#### (Decided Jan. 31, 1906.   40 So. Rep. 137.)

1. *Courts; Jurisdiction; Constitutional Provisions; Statutes.*—Acts 1894-95, p. 881, the act which confers chancery powers and jurisdiction upon the circuit courts of Jefferson and other counties, is not unconstitutional.

2. *Constitutional Law; Limitation of Powers.*—The legislative branch of the State government has supreme power in the enactment of laws, except where this power is limited by the constitution.

3. *Judges; Proceedings in Vacation; Appointment of Receivers.*—Under acts 1894-95, p. 881, the judges of the circuit court of Jefferson county have power and authority to appoint receivers in vacation.

4. *Receivers; Appointment; Notice.*—A receiver should not be appointed in *ex parte* proceedings upon the application of stock holders to dissolve a corporation, under the provisions of Acts 1903, p. 337, until after personal notice to resident, and published notice to non-resident, stockholders, and not then without proof as required; unless in case of great emergency otherwise allowed by law.

5. *Same; Notice to Corporation; Sufficiency.*—Upon application for a receiver, a letter from the V. president of the corporation to an attorney stating that the appointment of a person, therein named, as receiver, would be satisfactory to him, especially when it is not shown whether the letter was written before or after the appointment of the receiver, and the letter was not signed by the officer in his representative capacity, such letter is not a waiver of notice by the corporation, nor does it show notice to the corporation.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. Coleman.

This was a bill filed by Charles B. Powell as the administrator of a stockholder against the Ensley Development Company et. al. for an injunction to restrain certain corporate acts and for a receiver. From a decree appointing a receiver respondents appeal. The facts are sufficiently stated in the opinion.

[Ensley Development Co. v. Powell.]

CABANISS & WEAKLEY, for apellant. There was an entire want of authority on the part of the judge of the tenth judicial circuit to appoint a receiver. The appointment was made not by the circuit court of Jefferson county but by the Honorable A. A. Coleman, in vacation. —Acts 1903, p. 338; *Ex parte Farquhar & Son*, 99 Ala. 375; *Rogers v. Torbett*, 58 Ala. 523; 8 A. & E. Ency. of Law, p. 23, note 1.

Acts 1894-95, p. 881, limit the powers of the circuit court and of the judges while holding the court and does not confer power on a circuit judge in vacation to appoint a receiver without notice. Authorities supra; *James' Case*, 138 Ala. 594; *Cooley's Case*, 132 Ala. 592; *Newman v. Hammond*, 46 Ill. 36; *Ellis v. Karl*, 7 Neb. 381; 11 Cyc. 682. The Acts approved Feb. 18, 1895, Acts 1894-5, p. 881, is violative of the constitution.—*Nugent's Case*, 18 Ala. 524; *Roundtree's Case*, 51 Ala. 42; *Winter v. Sayre*, 118 Ala. 1. Prior to the constitution of 1901, the Legislature had no authority to confer chancery jurisdiction upon the circuit courts.—Authorities next above; *Ferris v. Higley*, 87 U. S. 375; *Vail v. Dimming*, 44 Mo. 210; 65 N. C. 379; 44 N. J. L. 118.

The appointment of a receiver, upon an ex parte application is never tolerated except in cases of the greatest emergency, for the prevention of irreparable injury, or in cases where the defendant has absconded and willfully puts himself beyond the jurisdictin of the court.— *Gilreath v. Union Bank & Trust Co.*, 121 Ala. 204; Alderson on Receivers, Sec. 124. The case made by the bill does not bring it within the rule.—*Little Warrior Coal Co. v. Hooper*, 105 Ala. 665; *Bank of Florence v. U. S. & L. Co.* 104 Ala. 294; High on Receivers, Sec. 111, and authorities supra.

CHARLES B. POWELL, for appellee.—The appeal should be dismissed for the reason that under the judgment of the court no such corporation as appellant exists.—*Nelson v. Hubbard*, 96 Ala. 238. The circuit judge of the tenth judicial circuit has authority to issue the injunction and to appoint the receiver.—Sec. 799, Code of 1896; Acts 1894-5, p. 881; *Bruce v. Ludekin*, 19 Cal. 170; *God-*

*dard v. State,* 2nd Yerger, 104; *Columbus v. Hydraulic W. M. Co.* 33 Ind. 436; *Dyckman v. McDonald,* 5 How. Pr. 121. Conceding the well established doctrine that it should be a very strong case sustained by strong affidavits to justify the appointment of a receiver the case made by the bill brings it within the rule justifying the action of the court.—*Edison v. Edison,* 52 N. J. Eq. 620; *Jasper Land Co. v. Wallace,* 123 Ala. 655; *Sternberg v. Woolf,* 39 L. R. A. 762.

Sec. 50, p. 338 of the Acts of 1903, justifies the appointment in this case.—*Cook v. East Trenton Co.* 53 N. J. Eq. 29; *Atlantic Trust Co. v. Consolidated Co.* 49 N. J. Eq. 402; *Albert v. Clarendon,* 53 N. J. Eq. 623.

SIMPSON, J.—This was a bill filed by a stockholder for injunction and receivership, as to a corporation. The injunction was granted and receiver appointed by the judge of the circuit court of Jefferson county.

It is contended in the first place, by appellant, that Acts 1894-95, p. 881, by which chancery jurisdiction was conferred on the circuit court of Jefferson county, is unconstitutional. In determining whether or not an act is violative of our State constitution, there are certain principles which have been so clearly enunciated by the courts as to become axiomatic. The first and cardinal rule is that the state constitution is a limitation, not a delegation, of power, so that the legislature has supreme power, except where limited or forbidden by the constitution. See authorities cited in 2 Mayfield's Dig. p. 684. Chief Justice Brickell has said also that: "There can be no just construction or interpretation * * * * * which is not deduced, not only from the words, but from the history of any particular part or provision of the instrument."—*State ex rel. Winter v. Sayre,* 118 Ala. 28, 24 South. 89.

Looking, then, to the history of our constitutional provisions in regard to the jurisdiction of the circuit and chancery courts, we find that, in the original constitution of 1819, article 5, § 1, provides that the judicial power of the state shall be vested in one supreme court, circuit courts, "and such inferior courts of law and equi-

[Ensley Development Co. v. Powell.]

ty * * * as the general assembly may from time to time, direct, ordain and establish." Section 6 provides that the circuit courts shall have original jurisdiction in all matters, civil and criminal, not otherwise excepted in this constitution, but in civil matters only where the sum in controversy exceeds $50. Section 8 of the same article authorizes the general assembly to establish a court or courts of chancery with original and appellate equity jurisdiction, and provides that, "until the establishment of such court or courts, the said jurisdiction shall be vested in the judges of the circuit courts respectively. Provided, that the judges of the several circuit courts shall have the power to issue writs of injunction, returnable into the courts of chancery." These provisions were continued in the same words in the Constitution of 1861 (article 5, §§ 1, 5, 7), except that, as the general assembly had already established courts of chancery, the sentence requiring the judges of the circuit court to exercise the jurisdiction of equity courts, until the chancery courts were established, is omitted. The provisions then are the same in the constitution of 1865; and in the constitution of 1868 the provisions are the same except that in article 6, § 1, the judicial power of the state is vested in "the senate, sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, probate courts," and such inferior courts, etc. And in the fifth section of said article, conferring jurisdiction "in all matters civil and criminal" not otherwise excepted, on the circuit court, there is a proviso that the circuit court shall have equity jurisdiction, concurrent with the courts of chancery in all cases of divorce, and in cases in which the matter in controversy does not exceed $5,000. In the constitution of 1875, under which the law in question was enacted, these provisions are substantially the same except that the proviso giving the circuit court equity jurisdiction in divorce cases, and in cases wherein the amount in controversy does not exceed $5,000, is omitted, and, while retaining in section 7 of article 6, the clause that the general assembly shall have power to establish courts of chancery, it goes on and directs that the state shall be divided into chancery

divisions and districts, in each of which divisions there shall be a chancellor, and requires a chancery court to be held in each district at least once in a year.

It will be observed that, while it is true that, at the time of the adoption of our constitutions, common-law courts and courts of equity had a defined meaning, yet the chancery courts were established in England to dispose of certain classes of cases, because of the extreme technicalities which had grown up in the common-law courts, disabling them from doing complete justice in such cases; and it is further a fact of history that the tendencies of modern legislation have been to round off the asperities of the common-law forms and to adapt the proceedings in such courts to a more equitable disposition of controversies, and it is not uncommon to combine the two in one court. It will be noted also that our own constitutional history on this subject shows that it has not been considered at all incongruous to confer chancery jurisdiction on the circuit court. On the contrary, until within a comparatively recent period, it has been enitrely optional with the legislative department whether or not we should have a separate chancery court at all, and the constitution itself made it incumbent on the circuit court to administer equity, until a court of chancery should be established, and, when the chancery court was definitely provided for by the constitution, it did not prohibit the legislature from giving the circuit court concurrent jurisdiction, in equitable matters, nor did it provide that the jurisdiction of the chancery courts should be exclusive. In fact the constitution does not define what shall be the jurisdiction of said court except as that may be inferred from the use of the word chancery; and in one of our constitutions the circuit courts were given concurrent jurisdiction in certain matters. It is a matter of legislative history also that jurisdiction has been conferred on the chancery court in matters in which the law courts had jurisdiction, and the effect of the same has been declared by our court to make the jurisdiction concurrent. It is a fact also that jurisdiction has been conferred on the probate court of some matters in which the chancery court previously had

jurisdiction, and of some in which the common-law courts had jurisdiction, and the constitutionality of such enactments has never been questioned. Section 5 article 6 of the constitution of 1875, like the others, confers upon the circuit court jurisdiction in all matters civil and criminal. The word "civil," when used in connection with "criminal," includes all matters of controversy except offenses against the state, not excepting equity suits.—6 Am. & Eng. Ency. Law, p. 34, and note 3, also page 96 and notes; *Livingston v. Story*, 9 Pet. 632, 9 L. Ed. 255; *Fenstermacher v. State*, 19 Or. 506, 25 Pac. 142. The words in this section "not otherwise excepted in this constitution" are not words of prohibition on the legislature, but simply words of description as to what jurisdiction is conferred absolutely on the circuit courts, and, while it may be true that the establishment of courts of chancery may be such an exception, so as to show that the circuit court does not necessarily retain equity jurisdiction, yet it is not a prohibition on the legislature from conferring concurrent jurisdiction. So, the proviso in the 6th section that the judges of the several circuits "shall have power to issue writs of injunction returnable into courts of chancery" only shows that this is a power which is distinctly reserved, so that the legislature cannot take it away, and, while it may indicate that it was not the intention of the constitution to confer absolutely on the circuit courts jurisdiction in other equitable matters, yet, under the first general principle referred to, it cannot be construed as a prohibition on the legislature from conferring additional powers and jurisdiction. In fact, the point in this proviso seems to be the power to make a writ returnable to another court. The jurisdiction of the chancery court is not interfered with by this act, as it still remains, with all of its original powers. This is not the substitution of one court for the other, nor the taking away of jurisdiction from one and conferring it on the other.

In a case in Texas, where the constitution provided that a district judge should hold the regular terms at one

place in each county, it was contended that this, by necessary implication, prohibited the legislature from creating more than one judicial district in a county, but the court held otherwise, stating that "An intention to restrict the power of a state legislature * * * further than is done by express limitations is not to be presumed; and when it is claimed that this is done by implication, those so claiming ought to be able to point out the provision or provisions of the constitution which require such implication."—*Lytle v. Halff* (Tex. Sup. )12 S. W. 610. In Ohio, where the constitution conferred on probate courts jurisdiction in the appointment of administrators and guardians, etc., it was held that an act conferring jurisdiction on the court of common pleas to appoint guardians of the property of intemperate persons was not prohibited by the constitution.—*Hagany v. Cohmen*, 29 Ohio St. 82. And in a subsequent case, although the case went off on another proposition, the court cites this case with approval, and states; "We find no case holding that this section of the constitution confers exclusive jurisdiction upon the probate court."—*State ex rel. v. Archibald*, 52 Ohio St. 1, 5, 38 N. E. 314. In our own court, where the constitution authorized the legislature to establish courts of probate "for the granting of letters testamentary and of administration and for orphans' busisess," it was held that "there is no prohibition against conferring upon such courts judicial cognizance of matters which are also within the jurisdiction of other courts."—*Balkum v. State*, 40 Ala. 671, 677. This court also sustained the constitutionality of an act conferring on the probate court jurisdiction in condemnation proceedings.—*N. O. M. & T. R. R. v. S. A. T. Co.* 53 Ala. 211, 223. In the Nugent Case, referred to in the brief of appellant, the only question decided was that a court created by act of the legislature, whose judgments were subject to appeal to the supreme court was an "inferior court," within the meaning of the constitution, although not subect to any revisory power in the circuit court, and the remarks of the court cited in their brief, besides being mere dicta, were referring to the powers of the courts by virtue of the constitutional

provisions, and had no reference to such powers as the legislature might distinctly confer on them. It may be admitted that no equity jurisdiction remains in the circuit court by virtue of constitutional provisions, but that does not mean that the legislature is prohibited from conferring the same on it.—*Nugent v. State*, 18 Ala. 521. In the *Roundtree Case*, cited by appellant's counsel, the only additional point decided was that, as the constitution required judges of inferior courts "to be elected by the voters of the district subject to the jurisdiction," the act in question was unconstitutional, because it made the judge of the fourth judicial circuit judge of the inferior court of law and equity attempted to be established at Decatur; the argument being that every voter in the district affected might vote against a man, and yet by votes in other counties he might become judge of their local court.—*Ex parte Roundtree*, 51 Ala. 42.

In the case now before the court, the judge of the circuit court is elected by the qualified voters, where he exercises his functions, and the chancellor who has been elected by them still has the same jurisdiction as he had before. It is merely a matter of concurrent jurisdiction which is entirely within the power of the legislature. Section 148 of the constitution does not necessarily show that the power did not exist before in the legislature; but, in view of the fact, which is presumed to have been known to members of the convention, that legislation of this character had been adopted and acted on for years, it is rather in the nature of a recognition of the policy and for the purpose of placing at rest any doubts which may have remained in the minds of any as to its constitutionality. The Act is not unconstitutional.

It is next insisted that, even although it be held that the circuit court of Jefferson county has chancery jurisdiction, under said act, yet that does not authorize the judge of said court to appoint a receiver in vacation. The first section of said act confers upon said circuit court "the same jurisdiction now conferred by law on courts of chancery," and that necessarily carries with it the power and duty of the presiding judge to make all

orders and decrees for the proper disposition of cases pending therein, and in the same manner, as could be done by the chancellor, if the case were in the chancery court. This is made evident by the further provisions of the act. Section 2 (page 882), provides that "any circuit judge holding court" in said counties "shall perform the same duties in equity cases pending in said circuit courts as are now required by law of chancellors holding chancery court in the several counties of the State." Counsel for appellant contends that the meaning of this section is such that duties shall be performed only while said court is in session. The section will not bear that interpretation because that had been provided for by the first section, as the duties performed while the court is in session are the acts of the court. The section does not provide that the judge when holding court shall perform the same duties as the chancellors do while holding court, but the meaning evidently is that the judge who holds said court shall perform said duties when he is simply judge and not court, as the chancellors who hold chancery court do as chancellors, and not as the chancery court. This intention is further shown by the third section, which provides that the chancery rules of practice shall apply. The first rule of chancery practice is that the courts "shall be deemed always open * * * for making by and before the chancellor all interlocutory motions, orders, decrees and other proceedings not affecting the merits of causes, but preparatory to their hearing upon the merits."—Code 1896, p. 1202. The legislature cannot be presumed to have intended that the circuit judge, who stands in the place of a chancellor with equal jurisdiction, should have less power in regard to these interlocutory matters than the register has. We hold, then, that the powers of the circuit judges in said county, in equity cases pending in said circuit courts, are the same as those possessed by chancellors. The cases cited by counsel referring to rendering decrees in vacation do not have any bearing upon these interlocutory matters.

It is admitted by the appellee that it is the "established doctrine in this state that it should be a very strong

case, sustained by strong affidavits of the facts and urgency, to justify the appointment of a receiver, where there is no bond given, or notice of the application"; but this court has expressed itself in stronger terms, to wit: "It may be regarded as elementary law that a receiver should not be appointed except upon a bill or petition filed praying it, and after answer thereto, unless the necessity be of the most stringent character, without consent of all parties to the record."—*Jordan v. Jordan,* 121 Ala. 419, 421, 25 South. 855. And, as stated in another case (quoting from High on Receivers) : "It must be clearly shown that the delay which would result from giving notice would defeat the rights of plaintitff, or would result in great injury to him."—*Gilreath v. Union Bank & Trust Co.* 121 Ala. 204, 208, 25 South. 581. It is a part of the judicial and legislative history of this country that frequently unfair advantages have been gained by parties, and wrongs perpetrated, by the hasty appointment of receivers on ex parte applications. And our statute provides that, "when application is made in vacation, reasonable notice of the time of such application, and the person to whom it will be submitted, must be given or a good reason shown to the chancellor or register for the failure to give the same."—Code 1896, § 799. The record shows that the bill was filed July 19, 1905; that the receiver was appointed and made bond on the same day; that the summons was not served on any one before July 21, 1905, and no notice of the application for a receiver given.

Appellee claims that J. W. Minor, vice-president of the corporation, had notice of the application, and approved the appointment; but the only evidence of this in the record is a letter to C. B. Powell, attorney, dated July 19, 1905' signed by J. W. Minor, J. H. Eubank, and stating that "the appointment of F. E. Blackburn as receiver" would be satisfactory to them. It is not shown whether this letter was written before or after the order of the court for the appointment of a receiver. Besides the fact that this seems to be merely an expression as to the personality of the receiver, and no agreement that a receiver should be appointd, it was not signed by Minor

in his official capacity, and does not show that he was acting for the company, and it does not appear anywhere in the record that he is the vice-president. On the contrary, the bill states "that the affairs of the corporation are under the complete control of the said Douglass H. Gordon and Eugene F. Enslen." This paper does not show a compliance with the requirements of the law.

Appellee relies next on section 50, p. 338, Gen: Acts 1903, and seems to construe that act as giving the absolute right to the appointment of a receiver without notice. There is nothing in said act which shows any intention to repeal the statutes in our code referred to, nor in any way to change the principles of law declared by our court. On the contrary, the act shows a clear intention to adhere to the same safe principles in regard to this important subject. Section 49 (page 337) provides for a dissolution on petition of two-thirds of the stockholders, but requires personal notice to all resident stockholders and publication as to nonresidents, and that action shall be only at a regular term of the court after 30 days' notice. Then section 50 authorizes creditors and stockholders to apply to the "court" for the appointment of a receiver, and authorizes the court, after being satisfied from the affidavits and after such notice to the corporation, if any, as the court may prescribe, to "proceed to hear the proof which may be offered by the parties, and upon such hearing it appears," etc., it may issue an injunction, and may appoint a receiver. Besides the fact that the entire sections show evident purpose to bring the opposing party in, and only appoint the receiver after both parties have been heard, it will be observed that the power is distinctly conferred on the court, and not on the judge. Whatever may be said about the court and the judge being synonymous, while the court is in session, and while, as before stated, it may be that the conferring of entire jurisdiction of certain matters on the court may authorize the judge to perform all those services which are usually necessary even in vacation, yet there is a clear distinction between the court (while in session) and the judge (in vacation), and when a distinct matter is clearly committed to the

court, in such terms as to indicate a purpose to have an investigation, both parties being present, and a judicial ascertainment of the facts, we cannot suppose that the lawmakers intended that the receiver should be appointed on an ex parte proceeding, except in the cases of great emergency otherwise allowed by law. It may be that the words "if any," in reference to the notice, may refer to those cases of great emergency, when it is necessary to appoint a receiver without notice, in order to preserve the property from destruction; but it certainly cannot mean to dispense with notice, in any other cases than those excepted by our decisions, as before quoted. In the present case there are no allegations of facts showing any spcial emergency, and proof of such.

There is no proof before the court of the matters alleged in the motion to dismiss the appeal. The motion to dismiss the appeal is overruled. The judgment of the court is reversed, and a decree will be here entered directing the receiver to surrender and deliver to the said Ensley Development Company, its officers or authorized agents, all and singular the property and assets of said Ensley Development Company heretofore delivered to said receiver by said Ensley Development Company or received by him otherwise under the order appointing said receiver, and the cause is remanded.

Reversed and remanded.

Tyson, Dowdell, and Anderson, JJ., concur.