277 So.2d 343

**MARTIN OIL CO., INC., et al.**

v.

**David L. CLOKEY et al.**

**Div. SC 278.**

Supreme Court of Alabama.

May 3, 1973.

Rehearing Denied May 24, 1973.

Lusk, Swann, Burns & Stivender, Gadsden, Wingo, Bibb, Foster, Conwell & Strickland, Birmingham, for appellants.

40

Inzer, Suttle, Inzer & Pruett, Gadsden, for appellee, David L. Clokey.

COLEMAN, Justice.

Appellants appeal from an order appointing a receiver for Martin Oil Co., Inc., an Alabama corporation. Title 7, § 758, Code 1940.

The appellants are the corporation, sometimes referred to as the company, and James D. Martin who is a stockholder and president of the corporation. He is herein referred to as Martin.

The appellees are David L. Clokey and Charles H. Fennelle. Both are stockholders and officers of the corporation. On January 23, 1973, they filed in the circuit court, in equity, an instrument entitled: "APPLICATION FOR THE APPOINTMENT OF LIQUIDATING RECEIVER."

Appellees, sometimes herein referred to as applicants, allege in the application that the principal place of business of the corporation is in Gadsden in Etowah County, Alabama. Appellants assert in brief that Martin resides in Gadsden. This assertion is not contradicted.

On January 29, 1973, the circuit court entered the order appointing a receiver pendente lite of all the property, assets, and estate of the corporation with authority to take immediate possession of said property including all books, papers, evidence of indebtedness, and all other property of every kind whatsoever belonging to

the corporation. It is ordered that the receiver shall continue to carry on the business of the corporation pending further orders of the court.

Neither the corporation nor Martin received notice of the application until January 30, 1973, on which day the sheriff of Etowah County served a copy thereof on Martin by handing it to Martin. The record contains nothing to explain why no service was had during the period between the filing on January 23 and the service on January 30. The first prayer in the application is that the court appoint a receiver pendente lite to take custody of the assets of the corporation and manage and operate its business and safeguard its assets until hearing can be had.

The averments of the application are that the principal place of business of the corporation is in Gadsden; that it is engaged in distributing petroleum products; that annually the corporation sells approximately 7,000,000 gallons of such products and about $40,000.00 in tires, batteries, and accessories, and owns "considerable real property" in Etowah and St. Clair Counties; that the directors of the corporation are Clokey, Fennelle, and Martin; that Martin is president, Clokey is vice-president, and Fennelle is secretary-treasurer of the corporation; that Clokey and Fennelle sell the products of the corporation and manage the "day-to-day operations exclusive of its financial affairs"; that from the time the corporation began business, Martin has directed its financial affairs; that Clokey owns one-fourth of the capital stock of the corporation, Fennelle one-fourth, and Martin owns the remaining one-half with possible exception of one share which applicants are informed and believe might have been issued to Thomas N. Martin; that when Clokey and Fennelle became shareholders they relied on Martin's assurance that each of them would receive one-fourth of the shares of stock outstanding; that each was deceived in that Martin issued to Clokey treasury stock; and that by issuing treasury stock

to Clokey, Martin increased his position of dominance in the company.

In Section 5 of the application, applicants aver that Martin has used his dominant position as chief financial officer to violate the salary agreement between the company and each officer; that Clokey and Fennelle, according to the agreement, are to receive, as salary, a sum equal to $13/15$ of the sum paid to Martin as salary; that Martin directed, in August of 1971, that no further salary should be paid to any officer of the corporation, and, since that time, with the exception of salary for December, 1972, and January, 1973, collected by applicants on their own motion, no salary has been paid to either of them; that, however, during the time from August, 1971, Martin continued to withdraw from the company and divert to his own purposes approximately $8,000.00 per month.

Applicants aver that Martin's refusal to attend directors' meetings and to abide decisions made by the directors has created a deadlock in the management of company affairs and the business of the company is threatened with immediate and irreparable injury; that Martin has used his position to misappropriate assets of the company to his own use and the use of members of his immediate family; that company records disclose that during the fifteen months including and next preceding November, 1972, Martin fraudulently used for his own purposes approximately $115,000.00 of the company's funds as follows: $12,300.00 to pay debt on home in Maryland, title to which is in Martin, his family, or Martin Realty Co., a corporation, herein called Martin Realty, in which Martin has a substantial interest; $28,000.00 to purchase a truck stop owned by Martin or his family or Martin Realty; $31,000.00 spent to purchase or maintain filling stations owned by Martin, his family, or Martin Realty; $38,000.00 to purchase a restaurant similarly owned by Martin or his family; $11,200.00 to purchase a farm in Calhoun County, Alabama, also similarly

owned by Martin or his family; $1,200.00 to pay Martin's pledge to a church; and $400.00 on Martin's campaign for United States Senator.

Applicants aver that Martin has utilized one company employee full time as a worker on Martin's farm and has used other company employees to maintain his home, his personally owned filling stations and his farm, and has made an unauthorized loan of company funds to a personal friend; that for the past eight or nine years Martin has followed a " 'long standing and consistent program of misappropriation of the Company's assets' " and has brought the company " 'near to bankruptcy' " and made it " 'operationally insolvent' "; that the company is indebted to "AMOCO" in excess of $100,000.00, presently due and payable, and does not have on hand funds sufficient to pay that debt in the immediate future; that company has had to operate on a restricted cash flow and cannot take advantage of discounts on purchases from its principal supplier equivalent to approximately $1,000.00 per month.

Applicants aver that:

"9. There is great danger that Martin, if not enjoined from so doing, will destroy, alter, misplace, or otherwise remove from the jurisdiction of this court the book*d*s and records of the Company so that a full understanding of the pertinent facts will be impossible by this court. Certain of the most important and pertinent records of the Company which are readily available, have been secured by the applicants and will be deposited by the Court's designated officer upon request."

Applicants further aver that because of the history of mismanagement and fraud Martin has perpetrated upon applicants, they "can no longer agree actively to be engaged in business with him"; that appointment of a receiver is necessary to collect the assets of the company, to operate its business pending liquidation, to recover from Martin, his family, or Martin Realty Company assets he has fraudulently misappropriated, and to supervise an audit of the company's books to account for the misappropriated assets.

In addition to the first prayer for appointment of receiver for corporation as mentioned above, applicants pray for temporary injunction to enjoin Martin from interfering with the receiver or disposing of his interest in the stock of the corporation, any service station in Etowah or St. Clair County, his Calhoun County farm, his Maryland residence, the Scruggs' Truck Stop, the Riverboat Restaurant, and his interest in Martin Realty.

Applicants pray also for temporary injunction enjoining Martin's wife from disposing of any interest she has in the property mentioned in the next preceding paragraph.

Applicants pray for injunction enjoining State National Bank of Alabama and American National Bank of Gadsden from permitting anyone, except the receiver, to withdraw funds deposited to the account of the company or to use the company's credit. Applicants pray also for injunction enjoining Martin Realty from disposing of its assets, including but not limited to cash and funds on deposit.

The injunctions prayed for were issued, but issuance of the injunctions is not assigned as error.

The order appointing receiver is assigned as error. Seven reasons are asserted and argued by respondents as grounds to support this assignment. Among these are those next considered.

Respondents argue that appointment of the receiver was unauthorized because no suit was pending when the appointment was made. This court has said:

"As a general rule, a receivership is purely ancillary to the main cause of action, and not an independent remedy, and therefore the jurisdiction of the court cannot be invoked to the appointment of

a receiver, except in cases affecting infants, idiots, and lunatics, unless there is a pending suit brought to obtain some relief which the court has jurisdiction to grant. Crowder, Newman et al. v. Moone, 52 Ala. 221 [220]; Harwell v. Potts, 80 Ala. 70; Howell & Howell v. Harris-Cortner & Co., 168 Ala. 383, 52 So. 935, Ann.Cas.1912B, 234; 4 Ann. Cas. note page 66; 23 R.C.L. p. 12, § 6; note 72 Am.St.Rep. 30." Ex parte Goodwyn, 227 Ala. 173, 178, 149 So. 216, 220.

In Crowder v. Moone, supra, the appeal was from an order appointing a receiver one day before the bill was filed. In reversing, among other things, this court said:

"A suit in chancery is not commenced until the filing of the bill; thus it appears that this suit was not pending when the order appointing a receiver was made. Rev.Code, section 3382.

"We hold that the general power of the court of chancery to appoint a receiver, requires a suit to be pending; and such seems to be the rule in England save in extreme cases. Edwards on Receivers, p. 13." (52 Ala. 220, 221)

On appeal from an order appointing a receiver, in Harwell v. Potts, supra, this court reversed and said:

". . . The filing of the bill is the commencement of the suit. Code, § 3759. There was no suit pending at the time the order appointing the receiver was made; and the chancellor was without jurisdiction. . . ." (80 Ala. at 72)

In Howell & Howell v. Harris-Cortner & Co., supra, this court revoked the appointment of a receiver, saying:

". . . In the cases heretofore decided by this court the considerations here urged were necessarily involved; but it was held that, where a receiver was appointed upon ex parte application before bill filed, the appointment should

be revoked upon appeal without weighing the merits of the application. We perceive no overruling reason for departing from those cases, and conceive our duty to be, on consideration of all the circumstances, to follow in their wake." (168 Ala. at 389, 52 So. at 937)

The receiver was appointed in the instant proceeding without notice to respondents. Respondents argue that the order appointing the receiver is improper because the rule is that the appointment of a receiver without notice is improper unless the bill or application on which the order is founded sets forth facts showing an imperious and stringent necessity for the appointment without notice, and here no such necessity is shown.

In Crowder v. Moone, supra, this court said:

"But another and a fatal objection exists to the order in this case; it was made without previous notice to the necessary and interested parties. As a general rule such notice is necessary; but the rule is subject to exceptions in special cases where irreparable injury would be sustained by the delay. In the present case it was not shown that special circumstances existed which rendered it necessary or proper to put a receiver upon the property of appellants without giving them an opportunity to be heard. The People v. Norton, et al., 1 Paige, 17; Sanford v. Sinclair, 8 Paige, 372. The record informs us that two of the appellants, Crowder and Newman, who are interested, with the appellee, in the property involved in the litigation, reside in Madison county where the bill was filed; and there is nothing in the record to show that they could not have been readily notified of the application." (52 Ala. 220, 221)

In Moritz & Weil v. Miller, Schram & Co., 87 Ala. 331, 6 So. 269, appeal was from an order appointing a receiver under a bill seeking to set aside a transfer by Moritz & Weil of their books, notes, ac-

counts, and other choses in action to other defendants on the alleged ground that the transfer was made on a fictitious consideration with intent to defraud complainants and other creditors. This court said:

" . . . The equity of the bill may be conceded. The question on this appeal is not, solely, whether the bill makes a *prima facie* case for the appointment of a receiver—a case in which it does not seem reasonable that the assets should be left in the possession of the defendants pending the litigation. A decision as to the propriety and necessity of appointing a receiver would be premature, in advance of a showing by defendants against it, or an opportunity to make such a showing. The receiver being appointed without notice, and before service of process, the material question is, whether a good reason is shown for the failure to give notice.

"By the established practice, independent of statute, courts of equity, being averse to interference *ex parte*, will entertain, in ordinary cases, an application for the appointment of a receiver, only after notice, or rule to show cause. The exceptional cases are when the defendant is beyond the jurisdiction of the court, or can not be found, or when some urgent emergency is shown rendering interference, before there is time to give notice, necessary to prevent waste, destruction, or loss, or when notice itself will jeopardize the delivery of the property, over which the receivership is extended, in obedience to the order of the court. The statute being silent as to what will constitute a good reason, precedents and adjudged cases under the general practice, in the absence of statutory regulations, will afford a sufficient guide. The bill alleges that the defendants, to whom the books, notes and accounts were transferred, are rapidly collecting the indebtedness, and placing the money beyond the reach of the creditors. If, in connection with this averment, the

insolvency of these defendants, or their inability to respond to any decree which may be rendered against them if the transfer be declared fraudulent, had been alleged, it may be that a good reason would have appeared for the failure to give notice. (Citations Omitted) But the bill contains no such allegation, and the averment made is verified on information and belief, without stating the source of the information, its character, or when obtained. The reason for failure to give notice, deducible from the mere allegations of the bill, is a mere suspicion, opinion, or belief, that defendants may spirit away the effects, and place them beyond the power of the court to compel their delivery.

" . . . . . . . . . .

"On the foregoing principles, we are forced to the conclusion, that the allegations of the bill, and the affidavit for the appointment of a receiver, do not justify such appointment without notice. . . ." (87 Ala. at 332, 333, 334, 6 So. at 269, 270)

In Thompson v. Tower Manufacturing Co., 87 Ala. 733, 6 So. 928, the case is stated as follows:

"The bill in this case was filed on the 19th April, 1889, by the Tower Manufacturing Company, and other New York creditors of V. L. Thompson, against him and his mother, Mrs. C. A. Thompson; and sought to set aside, on the ground of fraud, a conveyance of his entire stock of goods by said V. L. Thompson to his mother, and the appointment of a receiver to take charge of the goods. The bill alleged that V. L. Thompson was 'legally insolvent,' having no property which could be reached by the ordinary process of law, though he had moneys in his possession, the proceeds of recent sales of goods for cash, which he fraudulently withheld from his creditors; but there was no allegation of the insolvency of Mrs. Thompson. On

the filing of the bill, before the service of process, the complainants submitted an application for the appointment of a receiver, supported by the joint affidavit of their several solicitors, to this effect: 'that they believe it is absolutely necessary for the protection of complainants that a receiver be appointed *instanter* as prayed in said bill, and without notice to defendants; that they believe, if notice of said application was given to said defendants, they would sell or dispose of said property before a receiver could be appointed, and thus leave complainants remediless; and that said C. A. Thompson is already trying, and has tried, to dispose in whole of said property conveyed to her.' A receiver was appointed on the filing of these affidavits, and the order appointing him is now assigned as error." (87 Ala. at 733, 734, 6 So. 928)

In reversing the order appointing receiver this court said:

"In the absence of an averment that Mrs. C. A. Thompson was and is unable to respond to the recovery complainants allege they are entitled to, the order appointing the receiver in this case must be reversed, on the authority of Moritz & Weil v. Miller, Schram & Co., at the present term, *ante,* 87 Ala. 331, p. 336, 6 So. 269. . . .

"If it had been shown that Mrs. Thompson was insolvent, we will not say what would have been our ruling; for the bill avers that she is endeavoring to dispose of the goods. The averments of the bill, if made good, show a flagitious case of fraud.—Tryon v. Flournoy, 80 Ala. 321.

"Decretal order appointing receiver reversed, and cause remanded." (87 Ala. at 734, 6 So. at 928)

In Hayes v. Jasper Land Co., 147 Ala. 340, 41 So. 909, the bill was by a minority stockholder and in which the corporation and its president were made respondents.

The purpose of the bill was to require an accounting by the respondent president for alleged transactions by him as such officer. The bill prayed for a receiver and was accompanied by petition for appointment of a receiver which the chancellor refused and from the order refusing to appoint the appeal was prosecuted. The bill averred that of 4990 shares outstanding, the respondent president owned or controlled over 4700 shares; " . . . that he has abused his control of said corporation and his trust as vice president and general manager, and later as president; that he has loaned to himself, and to companies owned and controlled by him, large sums of money belonging to the land company; that he has called stockholders' meetings without notice, and has presented and had allowed by the stockholders and directors unfounded claims and demands against the land company; that on September 13, 1905, he procured to be declared a dividend of $29.50 per share of the stock of the land company, which was paid out of the capital assets of the company; that he has taken and is now taking from the treasury excessive sums in the form of salaries and expenses; that he is in the absolute control of the said land company, and of its money, and assets; and that, unless the same is taken from him and protected by a court of equity, he will continue to appropriate the same to his own use, under various guises and devices, which would make it difficult, if not impossible, to trace and recover the same. It is not averred in the bill that either Musgrove or the respondent corporation are insolvent. The bill further shows that the defendant corporation has a board of directors and officers, that have the mangement and control of its business and affairs, and it is not denied that these officers are administering the business purposes of the corporation, though it is charged that the board of directors are under the domination and control of the said Musgrove, and that through the mismanagement and fraud the corporation will ultimately be destroyed. . . ." (147 Ala. at 343, 344, 41 So. at 910)

In affirming the refusal to appoint a receiver for the corporation, this court, among other things, said:

". . . Again, a receiver should not be appointed at any stage of the proceedings if any other remedy will afford adequate protection to the party applying. (Citations Omitted)

"It has been ruled by this court that the fact that the directors and officers of a corporation are fraudulently misappropriating the assets of the company will not alone of itself constitute ground for the appointment of a receiver. If they are solvent, they can be brought to an accounting, which will afford complete relief and is therefore an adequate remedy.—Briarfield Iron Works v. Foster, 54 Ala. 622; Alabama Coal & Coke Company v. Shackelford, 137 Ala. 224, 34 So. 833, 97 Am.St.Rep. 23; Donald v. Export Company, 142 Ala. 578, 38 So. 841. . . ." (147 Ala. at 345, 41 So. at 910)

In a suit for appointment of receiver and accounting this court reversed a decree appointing a receiver for a corporation. The court said:

"As said by Stone, C. J., in Thompson v. Tower Mfg. Co., 104 Ala. 140, 16 So. 116, and often reaffirmed by this court: 'It should be a strong case of emergency and peril, well fortified by affidavits, to authorize the appointment of a receiver, without notice to the other party.'—Pollard v. Southern Fertilizer Company, 122 Ala. 409, 25 So. 169. . . .

". . . . . . . . . .

"It must be assumed that the defendants are solvent, and not insolvent, as claimed on information and belief; and such being the presumption the allegation that they are fraudulently misappropriating the assets of the company cannot avail to aid the complainants in obtaining the purpose of their prayer.—Hayes v. Jasper Land Co., 147 Ala. 340, 41 So. 909.

"It has been well said that receivers should be appointed only to 'prevent fraud, save the subject of litigation from material injury, or preserve it from threatened destruction.' Briarfield Iron Works v. Foster, 54 Ala. 622. And the mere allegation of a disagreement among the directors or stockholders as to the management of the business, in the absence of fraud, would ordinarily be no sufficient ground to justify such appointment.—Little Warrier Coal Co. v. Hooper, 105 Ala. 665, 17 So. 118." Birmingham Disinfectant Co. v. Smith, 174 Ala. 374, 376, 377, 56 So. 721, 722.

In Van Antwerp Realty Corp. v. Cooke, 230 Ala. 535, 162 So. 97, this court affirmed a decree overruling demurrer to a bill. The court held that while the bill did not show a right to have a receiver appointed, the bill did show a right to other relief. This court considered the circumstances in which a receiver will be appointed at the suit of a minority stockholder when the corporation is solvent and a going concern, but had this to say:

"When tested by those rules, the right to a receiver is not here shown. Insolvency of the corporation or its officers is not alleged, nor any other fact which justifies the appointment of a receiver to operate its affairs." (230 Ala. at 538, 162 So. at 99)

The following footnote is found in Fletcher, Cyclopedia of The Law of Private Corporations, Permanent Edition, Vol. 16, pages 67 and 68, to wit:

"A receiver may be appointed without notice to the defendant which is to be dispossessed of its property and assets, but cases in which notice may be dispensed with are exceptional. Bank of Florence v. United States Savings & Loan Co., 104 Ala. 297, 302, 16 So. 110, 111. It should be a strong case of pressing emergency and peril, well fortified by affidavits, to authorize the appointment of a receiver without notice to the other party (Birmingham Disinfectant

Co. v. Smith, 174 Ala. 374, 56 So. 721; Ensley Development Co. v. Powell, 147 Ala. 300, 311, 40 So. 137; Bank of Florence v. United States Savings & Loan Co., 104 Ala. 297, 16 So. 110, 111; Thompson v. Tower Mfg. Co., 87 Ala. 733, 60 So. 928), or it must be shown that notice would jeopardize the delivery of the property over which the receivership is to be extended. Bank of Florence v. United States Savings & Loan Co., 104 Ala. 297, 302, 16 So. 110, 111. He should not be appointed in ex parte proceedings upon the application of stockholders to dissolve the corporation, until after personal notice to resident and published notice to nonresident stockholders. Ensley Development Co. v. Powell, 147 Ala. 300, 311, 40 So. 137."

Appellants argue also that a receiver will not be appointed for a corporation when there is another adequate remedy; and that an adequate remedy by accounting and injunction precludes the appointment of a receiver, citing Fletcher, Vol. 16, supra, pages 203, 206, 209; Hayes v. Jasper Land Co., supra; Birmingham Disinfectant Co. v. Smith, supra; and Alabama Coal & Coke Company v. Shackelford, supra.

In reply to appellants' argument, the applicants say that the appointment of a receiver for a corporation is authorized by Act No. 414, approved November 13, 1959, 1959 Acts, page 1055, Sections 78 and 79; which appear in the pocket parts of the 1958 Recompilation of the Code as Title 10, § 21(78) and § 21(79).

The cited statute, §§ 78 and 79, does contain certain provision for dissolution and liquidation of corporations and for appointment of receivers, but we are not advised as to provisions in the statute which authorize such appointment without notice when no suit is pending, or when the imperious and stringent necessity for appointment without notice is not shown, or when it is not shown that there is no other adequate remedy. Here, no bill of complaint has been filed. It is not alleged that either the corporation or Martin is insolvent. It is not shown that injunction or accounting will not afford an adequate remedy.

The applicants cite the cases next discussed. In Cowin v. Salmon, 248 Ala. 580, 28 So.2d 633, this court affirmed a decree dissolving two corporations. Apparently a receiver had been appointed. The appeal was the second appeal in litigation between the same parties relating to the same subject matter. See Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190. The decree appears to have been a final decree after hearing. No question is presented with respect to appointment of a receiver without notice.

In Jasper Land Co. v. Wallis & Carley, 123 Ala. 652, 26 So. 659, this court affirmed a decree appointing a receiver. The statement of the case recites that on submission of the cause on the petition for appointment of receiver, motion to dismiss the bill, demurrers, *answers of the defendants,* "and upon the testimony," the court rendered a decree granting the petition and ordered the appointment of receiver. There the respondents had filed an answer and there was no lack of notice.

In Bateh v. Brown, 289 Ala. 695, 271 So.2d 830, the appeal was from a decree in a suit which sought dissolution and liquidation of a corporation, the appointment of a receiver, and distribution of the assets. A bill of complaint was filed May 6, 1971. Decrees pro confesso were entered against respondents on June 10, 1971. On June 15, 1971, respondents filed "a purported answer"; on June 21, 1971, respondents filed petition to set aside the decrees pro confesso; and on August 31, 1971, the court entered a final decree. Clearly the respondents had ample notice.

In American Armed Services Underwriters v. Atlas Insurance Company, 268 Ala. 637, 108 So.2d 687, this court affirmed an order issued ex parte appointing a receiver for a corporation. There are at least two material differences between *Armed Services* and the instant case. The order in

*Armed Services* appointing the receiver was issued upon a bill filed by complainant and three supporting affidavits. In the instant case no bill had been filed. The respondents to the bill in *Armed Services* were four individuals, namely: Cooney, Kenney, Wallace, and Cage, and a Nevada corporation, and a bank. In the statement of the case the following appears:

"It is alleged that respondent Cage is the beneficial owner of all or a majority of the capital stock of Delaware, but if not such owner respondents Cooney, Kenney and Wallace are dominated by and under the influence of Cage and carry out his will in the business of Delaware; that, on information and belief Cage is under indictment and a fugitive. That respondents Delaware, Cooney, Kenney, Wallace and Cage are insolvent and judgment at law against them would be fruitless; that they can and in probability will remove the books and records of Delaware beyond the jurisdiction of the court and complainant will be in peril of forfeiting its right to do business as an insurance company unless a receiver is immediately appointed as prayed, without notice and without delay, and that great and irreparable injury and damage to complainant and policyholders will result unless such receiver is appointed." (268 Ala. at 641, 108 So.2d at 690)

In the instant case, there is no allegation that either of the appellants is insolvent.

In Ashurst v. Lehman, Durr & Co., 86 Ala. 370, 5 So. 731, a bill was filed December 15, 1888, against appellants and sought foreclosure of a mortgage executed by appellants conveying a tract of land and the crops to be grown on the land in the year 1888. The bill prayed the appointment of a receiver to take possession of the crops. A receiver was appointed by the register on the day the bill was filed. An appeal to the chancellor was taken from the order of the register, and the chancellor affirmed. The chancellor's decree was assigned as error on appeal to this court. This court affirmed saying:

"The allegations of the bill, which are verified, are not controverted. We must, therefore, on appeal, assume their truth. The relation of mortgagees and mortgagor exists between complainants and defendant. The mortgage conveys land, the crops grown during the current year, and other personal property, as security for a debt due by defendant to complainants. The lands are incumbered by a prior mortgage to the extent of their value. The claim of the complainant is past due. The bill avers, that defendant has refused to deliver the crops and other personal property embraced in the mortgage, and claims that there are prior liens upon the crops. It also avers that the defendant has appropriated a portion of them to purposes other than the payment of complainants' debt; that defendant is insolvent; and that the crops are in danger of being lost or destroyed, unless they are promptly taken into the custody of the court; and that the security is inadequate, unless they are preserved and applied to the satisfaction of complainants' debt.

"The receivership was extended only to the crops. Considering the nature and character of the subject-matter of controversy, the facility with which the crops may be disposed of, their liability to waste or destruction, the necessity of their preservation and application to the mortgage debt, the insolvency of defendant, and his application of a part of the crops in disregard of the rights of complainants, we are of opinion that the bill makes a *prima facie* case for the appointment of a receiver, and shows a good reason for the failure to give notice of the application.—Sims v. Adams, 78 Ala. 395." (86 Ala. at 371, 372, 5 So. at 731, 732)

In the case at bar, for the reasons that no bill had been filed, that it had not been shown that appellants were insolvent, and

for aught that appears injunction and accounting would furnish an adequate remedy for the applicants, the necessity for appointment of a receiver without notice does not appear and the order appointing the receiver without notice is erroneous and is revoked.

As to what rights the parties may be shown to have in further proceedings we express no opinion.

Reversed and remanded.

BLOODWORTH, McCALL, FAULKNER and JONES, JJ., concur.